1997–NMSC–010

933 P.2d 223

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Carlos ANAYA, Christopher Kilgore, and Bobby M. Irish, Defendants–Appellants.**

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Natoni NAKAI, Defendant–Petitioner.**

**Johnny MARTINEZ, Petitioner,**

v.

**Hon. W. Byron CATON, District Judge, Eleventh Judicial District Court, Respondent.**

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Tommy R. GONZALES, Defendant–Appellant.**

Nos. 22889, 23204, 22978, 23236.

Supreme Court of New Mexico.

Dec. 6, 1996.

Certiorari Denied Jan. 29, 1997.

---

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, Jesse R. Cosby, Roswell, Kurt Reif, Carlsbad, for Defendants–Appellants in No. 22889.

Tom Udall, Attorney General, Margaret E. McLean, Assistant Attorney General, Santa Fe, for State in Nos. 22889, 22978, 23236.

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for W. Byron Caton, Tommy R. Gonzales, Natoni Nakai.

Tom Udall, Attorney General, Margaret E. McLean, Assistant Attorney General, Santa Fe, for Johnny Martinez in No. 23204.

## OPINION

FRANCHINI, Justice.

(1) On motion by Defendants for rehearing or such other relief as the Court deems proper and just, the opinion filed on May 31, 1996, is withdrawn, and the following opinion is substituted in its place.

(2) The legislature recently amended the basic statute criminalizing driving while intoxicated (DWI). *See* NMSA 1978, § 66–8–102 (Repl.Pamp.1994). The legislature provided, among other changes, that a person found guilty of a fourth offense of DWI "is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a jail term of not less than six months which shall not be suspended or deferred or taken under advisement." Section 66–8–102(G).

(3) We consolidated several appeals which raise two central questions about the recent amendment: (1) whether the State must prove three prior DWI convictions as an essential element of the offense of felony DWI; and (2) what, if any, formal notice must the State provide to the defendant in order to enhance misdemeanor DWI to felony DWI. Some of the appeals raise the additional question whether a conviction under Section 66–8–102(G) may be enhanced pursuant to the habitual offender statute. *See* NMSA 1978, § 31–18–17 (Repl. Pamp.1994). We hold that the most recent amendment to the DWI statutes did not alter the elements required to establish the offense of DWI and thus that proof of prior convictions is not an element of felony DWI. Moreover, we conclude that the legislature did not intend that defendants convicted of a fourth or subsequent DWI offense should be subject to enhancement under both the felony DWI provision and the habitual offender statute. Two of the defendants raised issues regarding their convictions and sentences other than those we address. Therefore, we reverse the sentences in four appeals, and remand two appeals to the Court of Appeals

for review of other issues raised on appeal as explained below for each defendant.

## FACTS

(4) Defendant Anaya was charged by information with DWI and bound over for trial following a preliminary hearing. He was convicted by a jury instructed solely on the elements of misdemeanor DWI. At sentencing the trial court made a finding that Anaya had three prior DWI convictions and sentenced him to 18 months in jail. The court suspended 12 of the 18 months. This resulted in a 6-month jail term, the minimum sentence permitted by Section 66-8-102(G). The State then filed a supplemental information alleging that Anaya had three prior felony convictions wholly unrelated to the charge of DWI—manslaughter in 1962, possession of marijuana in 1968, and possession of a firearm in 1979. The trial court sentenced Anaya to an additional 8 years as a habitual offender for a total of 8½ years.

(5) The facts of Defendant Gonzales's case are similar to those of Anaya's. The State charged Gonzales by information with felony DWI and the misdemeanor offense of driving with a revoked license. At trial the court instructed the jury solely on the elements of misdemeanor DWI. While the jury was deliberating, the court heard evidence of five prior DWI convictions over Gonzales's objections that the conviction documents were unattested. The court found that the State had proof of four prior DWI convictions in sequence within the meaning of *State v. Linam*, 93 N.M. 307, 309, 600 P.2d 253, 255, *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979), and Gonzales admitted these prior convictions. After the jury returned a guilty verdict, the court arraigned Gonzales on a supplemental information, which alleged that he was a habitual offender. Gonzales admitted that he had four prior felony convictions: burglary (1977), escape from jail (1983 and 1988), and possession of cocaine (1993). The trial court sentenced Gonzales to a total of 9½ years: 1½ years for felony DWI; 364 days for driving on a revoked license, to be served concurrently with the DWI sentence; and 8 years as a habitual offender.

(6) Defendants Kilgore and Irish were both convicted of felony DWI and sentenced to 18 months, 9 of which were suspended in both cases. Neither Kilgore nor Irish was subject to a sentence enhancement as a habitual offender.

(7) Anaya, Gonzales, Kilgore, and Irish all appealed to the Court of Appeals, which certified these cases to this Court for resolution of the common issue "whether the existence of three prior ... DWI convictions is an element of the new crime of felony DWI, or a sentencing matter to be considered at the enhancement stage of a felony DWI case." In addition to the common issue certified, Anaya and Gonzales allege that the sentencing courts erred by enhancing their sentences pursuant to the habitual offender statute. Section 31-18-17. Anaya further asserts that the State failed to prove in sequence three prior DWI convictions in order to enhance the charges to a felony. *See Linam*, 93 N.M. at 310, 600 P.2d at 256; *Koonsman v. State*, 116 N.M. 112, 114, 860 P.2d 754, 756 (1993).

(8) The procedural postures of the remaining two appeals are somewhat different. After being charged with felony DWI, Defendant Nakai entered into an alternative plea agreement with the State in which he agreed to plead guilty to felony DWI if the State was able to prove any prior DWI convictions. In the event the State was unable to prove prior convictions, he would plead guilty to misdemeanor DWI. Following execution of this plea agreement, the State filed a supplemental information alleging that Nakai previously had been convicted of escape from jail and that he was a habitual offender. At a sentencing hearing the trial court heard evidence regarding Nakai's prior DWI convictions and found that the State had proven three such convictions. At that same hearing Nakai admitted the prior felony conviction. The court sentenced Nakai to 18 months for felony DWI. The court also adjudged Nakai a habitual offender and enhanced his sentence by 1 year for a total sentence of 2½ years.

(9) Nakai appealed to the Court of Appeals, which affirmed his sentence by a memorandum opinion filed September 21, 1995.

Nakai concedes that by pleading guilty he has waived his right to appeal on the ground raised by the other defendants—that proof of prior DWI offenses is an element of felony DWI. We granted certiorari in his case to address two other issues: (1) whether the State adequately notified him of the particular prior DWI offenses that it intended to use against him, and (2) whether the trial court properly enhanced his sentence pursuant to the habitual offender statute.

(10) The sixth and final defendant, Martinez, pleaded guilty to DWI in 1994. At sentencing the trial court found that he had three prior DWI convictions under Section 66–8–102(G) and imposed an 18–month sentence. Martinez admitted to two prior felony convictions—battery on a peace officer (1988) and great bodily injury by vehicle (1986). The trial court suspended 1 year of the 18–month sentence and enhanced it by 4 years, resulting in a sentence of 4½ years. Martinez did not file an appeal. He did, however, file a pro se habeas corpus petition in district court. This petition raised, inter alia, the same issue raised by Anaya, Gonzales, and Nakai—that a sentence resulting from a felony DWI conviction cannot be enhanced under the habitual offender statute. The district court granted Martinez partial relief but denied him relief on this ground. We issued a writ of certiorari and consolidated his case with the other appeals.

## DISCUSSION

### I. Element of a Crime or Status for Enhancement; Procedural Consequences

(11) The issue before us is whether the legislature, in designating a fourth or subsequent DWI conviction as a fourth degree felony, contemplated a crime different from a first, second, and third DWI conviction—each charged and treated as a misdemeanor—or whether the fourth-degree-felony designation was intended only to enhance the punishment for repeat DWI offenders. If the legislature intended to establish a separate crime of felony DWI, then proof beyond a reasonable doubt of a defendant's three prior DWI convictions would necessarily constitute an element of the offense. Anaya, Gonzales, Kilgore, and Irish argue that the State was required to present proof of prior convictions at the preliminary hearing stage as well as at trial.

(12) This issue has arisen before on petition for writ of prohibition or superintending control. See State ex rel. Whitehead v. Eastburn, S.Ct. Order No. 21,910 (Feb. 23, 1994). In that matter Judge Eastburn dismissed a charge of felony DWI because the State had failed to present proof of at least three prior DWI convictions at the preliminary hearing. Judge Eastburn's order noted that the issue presented needed to be resolved promptly because it was an issue "which will affect over twenty prosecutions a month until answered." After oral argument this Court issued a writ of prohibition. Our order stated "that NMSA 1978, Section 66–8–102(G) does not encompass the elements of the crime in terms of prior convictions in order to punish the accused, if convicted, of the felony provided for in the statute." Based on this order, we directed Judge Eastburn to order the defendant in that case bound over for trial notwithstanding the absence of proof of three prior DWI convictions at the preliminary hearing.

(13) As the Court of Appeals noted in certifying the appeals of Anaya, Gonzales, Kilgore, and Irish, our prior decision was not published, and thus it could not be relied upon to resolve the same issue raised in subsequent appeals. See Rule 12–405(C) NMRA 1996 ("An order, decision, or memorandum opinion, because it is unreported and not uniformly available to all parties, shall not be published nor shall it be cited as precedent in any court."). However, we may take judicial notice of the record on file in this Court. State v. Turner, 81 N.M. 571, 576, 469 P.2d 720, 725 (Ct.App.1970) (Court of Appeals took judicial notice of stipulation pertaining to pending case filed in prior related case and of record in the Court of Appeals). We take judicial notice of our prior order in Eastburn because it underlies the Court of Appeals' decision to certify the appeals of Anaya, Gonzales, Kilgore, and Irish and because it explains the procedures followed in district court in each of these appeals.

(14) We now issue a published opinion consistent with our prior unpublished order.

We believe that the legislature did not intend to change the nature of the offense, but rather sought to increase the punishment for subsequent offenders by conferring fourth-degree-felony status on fourth or subsequent DWI convictions.

### A. The Relevant Text and History of Section 66–8–102

■ (15) Section 66–8–102 sets forth the statutory scheme for DWI offenses. Subsections (A) through (D) contain the elements of the crime. For example, "[i]t is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this state." Section 66–8–102(A). The remainder of Section 66–8–102—Subsections (E) through (L)—is devoted entirely to sentencing matters and definitions. A person convicted under Section 66–8–102 is guilty of a misdemeanor punishable by a jail term of not more than 90 days, a fine, or both. Section 66–8–102(E). A second or third conviction increases the fine and the possible jail term to not more than 364 days. Section 66–8–102(F). Subsection (G) further provides:

> Upon a fourth or subsequent conviction under this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a jail term of not less than six months which shall not be suspended or deferred or taken under advisement.

Section 66–8–102(G). Upon "any conviction," an offender shall be "required to participate in and complete, within a time specified by the court, an alcohol or drug abuse screening program and if necessary, a treatment program approved by the court." Section 66–8–102(H).

(16) The legislature incorporated several substantive changes to the DWI laws in its most recent amendments. It (1) decreased the alcohol concentration level at which a driver is presumed intoxicated from 0.1 percent to 0.08 percent; (2) created a new "degree" of DWI—aggravated driving under the influence—applicable to offenders with 0.16 percent alcohol concentration in their blood/breath or offenders who while driving under the influence cause bodily injury to another; (3) implemented sentencing guidelines for aggravated DWI; and (4) labeled fourth or subsequent DWI convictions as fourth degree felonies. However, the legislature did not change the basic definition of DWI as set forth in Section 66–8–102(A).

(17) The statutory scheme governing DWI defines the offenses of DWI and aggravated DWI and provides options for punishment in terms of imprisonment, community service, and referral and treatment programs at the trial court's discretion. Furthermore, over the years gradual and consistent increases in punishment for repeated DWI violations and implementation of rehabilitation options have been adopted to counter the problem of DWI in New Mexico. There have been twelve amendments to the DWI laws since 1941,[1] and each amendment has adopted a slightly higher degree of penalty, be it a mandatory jail term or court-ordered treatment for alcohol or drug abuse.

(18) The legislature consistently has separated the basic definition of the offense from the sentencing provisions for repeat offenses. *Compare* § 66–8–102(A) ("It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this State.") *with* § 66–8–102(E) ("Every person under first conviction under this section ...") *and* § 66–8–102(F) ("A second or third conviction under this section ...") *and* § 66–8–102(G) ("Upon a fourth or subsequent conviction under this section ..."). On the basis of this long-standing separation of offense definition and sentencing provisions, we conclude that in its deliberations the legislature more likely intended to enhance the sentence for repeat offenders rather than to create a new offense with discrete elements other than those already provided in Subsections 66–8–102(A) to (D).

---

1. History: NMSA 1941, § 68–2317, enacted by 1953 N.M. Laws, ch. 139, § 54; NMSA 1953, § 64–22–2; 1955 N.M. Laws, ch. 184, § 8; 1965 N.M. Laws, ch. 251, § 1; 1969 N.M. Laws, ch. 210, § 2; recompiled as NMSA 1953, § 64–8–102, by 1978 N.M. Laws, ch. 35, § 510; 1979 N.M. Laws, ch. 71, § 7; 1981 N.M. Laws, ch. 370, § 2; 1982 N.M. Laws, ch. 102, § 1; 1983 N.M. Laws, ch. 76, § 2; 1985 N.M. Laws, ch. 178, § 2; 1987 N.M. Laws, ch. 97, § 3; 1988 N.M. Laws, ch. 56, § 8; 1993 N.M. Laws, ch. 66, § 7.

(19) Moreover, the legislature has not provided for any alteration of DWI trial procedures for cases involving felony DWI charges. This is significant because if the defendant's status as a repeat offender is an element of felony DWI, then that issue must be tried before a fact-finder and therefore should have been tried before a jury in some of the appeals before us. Such evidence of prior DWI convictions would constitute the sort of propensity evidence that our rules ordinarily preclude because of its highly prejudicial nature. *See* SCRA 1986, 11–404(B) (Repl.Pamp.1994). In other states the legislature has provided for a bifurcated trial so that a jury might decide the issue of guilt regarding the offense being charged before hearing evidence of prior offenses. *See, e.g.,* S.D. Codified Laws Ann. §§ 32–23–4.2, – 4.3, –4.4 (1989)·(in a case involving felony DWI, the information charged shall be in two separate parts, setting out the current offense in one and alleging the former conviction or convictions in the other; the second part of the information shall not be divulged to the jury until there has been a finding of guilt on the first part). However, our legislature has made no express provision for a bifurcated proceeding. This supports our conclusion that the legislature did not intend that the crime of felony DWI should have different elements from the crime of misdemeanor DWI.

## B. *State v. Stout*

(20) Our determination that proof of prior DWI convictions is not an element of felony DWI is consistent with this Court's reasoning in *State v. Stout,* 96 N.M. 29, 627 P.2d 871 (1981). *Stout* considered the armed robbery statute, which provides that a first armed robbery offense is a second-degree felony whereas a second such offense is a first-degree felony. *See* NMSA 1978, § 30–16–2 (Repl.Pamp.1994). In that case the State learned of a previous armed robbery conviction several months after the defendant had been convicted of and had begun serving his sentence for second-degree armed robbery. The State then filed a supplemental information and obtained a conviction for first-degree armed robbery at a supplemental proceeding. The trial court subsequently vacated the original sentence and imposed a sentence of life imprisonment.

(21) On appeal the defendant argued that this procedure was improper and that he should have received notice, prior to trial, that the State intended to use his prior armed robbery conviction to seek an enhanced sentence. This Court disagreed, holding "[t]he state is not required to give the defendant notice before trial on the substantive offense that enhancement may be sought after conviction. By filing a pleading seeking to enhance the defendant's sentence, the state has complied with the guidelines set out in [*State v.] Rhodes],* 76 N.M. 177, 181, 413 P.2d 214, 217 (1966) (holding that fairness requires pleading giving notice and opportunity to be heard before imposition of increased penalty) ]." *Stout,* 96 N.M. at 31–32, 627 P.2d at 873–74. The armed robbery statute at issue in *Stout* was similar to New Mexico's DWI statute in that it provided both for a higher degree of offense and a more severe penalty for repeated violations. The *Stout* Court permitted the State to file a supplemental information alleging a prior armed robbery conviction after the defendant had already been convicted. Thus the Court did not view the earlier armed robbery conviction as an element of the crime—first-degree robbery—for which the defendant was ultimately convicted and sentenced. Rather, the *Stout* Court apparently viewed the offenses of second-degree robbery and first-degree robbery as including identical elements.

## C. District Court Jurisdiction

(22) We note that the legislature specifically provided that only the district court would have jurisdiction over felony DWI. *See* § 66–8–102(I). By contrast, "[i]n the case of a first, second or third offense under this section, the magistrate court has concurrent jurisdiction with district courts to try the offender." *Id.* Similarly, "[m]agistrates have jurisdiction in all cases of misdemeanors and petty misdemeanors ... [and they] also have jurisdiction in any other criminal action where jurisdiction is specifically granted by law." NMSA 1978, § 35–3–4(A) (Repl.

Pamp.1988). We cannot conclude from the fact that the legislature has restricted jurisdiction over felony DWI charges to the district court that the legislature thereby intended either to distinguish felony DWI as an offense with different elements than misdemeanor DWI or to mandate different trial procedures for felony and misdemeanor DWI.

### D. Other Case Law Support

■ (23) We are not persuaded that the legislature intended to change the essential nature of the crime of DWI itself. Rather, we are persuaded that the legislature added fourth-degree-felony status in Section 66–8–102(G) in order to increase the punishment for repeat offenders. In the absence of evidence that the legislature intended to add an element to the crime of DWI, we will not read one into the statute. *See State v. Powell*, 114 N.M. 395, 401, 839 P.2d 139, 145 (Ct.App.1992). The Arizona Supreme Court has held that under statutes like the one at issue here, "[t]he prior conviction is not an element of the basic offense, but a prior conviction does increase the penalty for that offense." *State ex rel. Collins v. Udall*, 717 P.2d 878, 879 (Ariz.1986) (en banc); *see also State v. Campa*, 168 Ariz. 407, 814 P.2d 748, 752 (1991) (reaffirming *Udall*). *But see People v. Bewersdorf*, 438 Mich. 55, 475 N.W.2d 231, 236 (1991) (distinguishing status of habitual criminal, which legislature did not intend to make a separate substantive crime, from provisions governing DWI crimes, of which prior convictions are elements), *cert. denied sub nom., Johnson v. Michigan*, 502 U.S. 1111, 112 S.Ct. 1214, 117 L.Ed.2d 452 (1992). We are persuaded by the Arizona cases and therefore hold that the designation of a fourth or subsequent DWI offense as a felony does not create a new crime, but rather increases the punishment for offenders with multiple DWI convictions. *See State v. Lyon*, 103 N.M. 305, 311, 706 P.2d 516, 522 (Ct.App.) (enhancement sentence not an element of the conviction, but rather a consequence of the prior DWI conviction; it does not create a new class of crimes, but creates new consequences for the criminal conduct), *cert. denied*, 103 N.M. 287, 705 P.2d 1138 (1985); *cf. State v. Lujan*, 90 N.M. 103,

105, 560 P.2d 167, 169 (1977) (holding that habitual criminality, punishable under the habitual criminal statute, is a "status" rather than a separate offense).

### E. Notice Requirement and Procedural Consequences

■ (24) *Stout* and the case upon which it relied, *Rhodes*, are also relevant to the next issue that we consider in this appeal: What formal notice must the State provide in order to enhance DWI misdemeanors to felonies? In *Rhodes* we held that the defendant was entitled to notice in the form of a pleading filed by the State before the trial court could enhance his sentence as a repeat offender under the Narcotic Drug Act. 76 N.M. at 181, 413 P.2d at 217. In *Stout* we held that the filing of a supplemental information and a supplemental hearing following conviction satisfied the notice requirement of *Rhodes*. *See* 96 N.M. at 31–32, 627 P.2d at 873–74; *see also Caristo v. Sullivan*, 112 N.M. 623, 631, 818 P.2d 401, 409 (1991) (holding that defendant is entitled to notice in the form of a pleading before the court may enhance his sentence pursuant to NMSA 1978, Section 31–18–15.1 (Repl.Pamp.1994)). In each of the cases before us, the State filed a criminal information alleging that the defendant had committed a felony in violation of Section 66–8–102(G). Furthermore, in each case the trial court conducted a hearing to determine whether the defendant had in fact been previously convicted of three or more DWI offenses. We are satisfied that these procedures satisfy the notice and hearing requirements of *Rhodes* and its progeny.

(25) However, as we noted earlier, the legislature intended to distinguish felony DWI from a first, second, or third DWI conviction in addition to providing an enhanced sentence. A fourth or subsequent offense is charged as a felony, over which the district court has exclusive jurisdiction. *See* § 66–8–102(I). Consequently, in the absence of more specific direction from the legislature, we think it appropriate that the State initiated criminal proceedings in this case pursuant to the constitutional guarantees associated with prosecution of a felony. N.M. Const. art. II, § 14 ("No person shall be held

to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general.... No person shall be so held on information without having had a preliminary examination ... or having waived such...."). However, because proof of three such convictions does not constitute an element of felony DWI, a probable cause showing regarding the existence of three prior convictions was not required in order to support jurisdiction in the district court. We do not decide in this appeal whether the State's approach was mandated. Rather, we determine the State did not deny Defendants due process by providing greater protection than the existing statute provides. *Cf. Minner v. Kerby,* 30 F.3d 1311, 1317 (10th Cir.1994) ("The State did not violate its own procedures, and thus did not violate due process, by charging appellant as an habitual offender by supplemental information.").

## II. Enhancement of a Felony DWI Conviction under Section 31–18–17

(26) We next must decide whether persons convicted under the felony DWI statute, Section 66–8–102(G), who have had one or more prior felony convictions are subject to further sentence enhancement as habitual offenders under Section 31–18–17. The applicable statute sections provide in pertinent part:

*66–8–102.*

G. Upon a fourth or subsequent conviction under this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a jail term of not less than six months which shall not be suspended or deferred or taken under advisement.

*31–18–17.* Habitual offenders; alteration of basic sentence.

A. For the purposes of this section, "prior felony conviction" means:

(1) a conviction for a prior felony committed within New Mexico whether within the Criminal Code or not; or

(2) any prior felony for which the person was convicted other than an offense triable by court martial if:

(a) the conviction was rendered by a court of another state, the United States, a territory of the United States or the commonwealth of Puerto Rico;

(b) the offense was punishable, at the time of conviction, by death or a maximum term of imprisonment of more than one year; or

(c) the offense would have been classified as a felony in this state at the time of conviction.

B. Any person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred one prior felony conviction which was part of a separate transaction or occurrence or conditional discharge under Section 31–20–7 NMSA 1978 [31–20–13 NMSA 1978] is a habitual offender and his basic sentence shall be increased by one year, and the sentence imposed by this subsection shall not be suspended or deferred.

C. Any person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred two prior felony convictions which were parts of separate transactions or occurrences or conditional discharge under Section 31–20–7 NMSA 1978 [31–20–13 NMSA 1978] is a habitual offender and his basic sentence shall be increased by four years, and the sentence imposed by this subsection shall not be suspended or deferred.

D. Any person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred three or more prior felony convictions which were parts of separate transactions or occurrences or conditional discharge under Section 31–20–7 NMSA 1978 [31–20–13 NMSA 1978] is a habitual offender and his basic sentence shall be increased by eight years, and the sentence imposed by this subsection shall not be suspended or deferred.

(27) Defendants argue that such enhancement would constitute an impermissible double enhancement. Defendants note that conviction under the felony DWI statute itself involves an enhancement from misdemeanor to felony. They argue that a second enhancement as a habitual offender is improper in the absence of clear evidence that the legislature intended to authorize that result. The State, on the other hand, asserts that there is no conflict between Section 66–8–102(G) and Section 31–18–17, and contends that the plain · language of these statutes mandates the application of both enhancements. The State points out that Section 66–8–102(G) makes a specific reference to the felony sentencing provision, NMSA 1978, Section 31–18–15 (Repl.Pamp.1994), and that Section 31–18–15 in turn refers to Section 31–18–17. We note, however, that Section 66–8–102(G) makes no reference to 31–18–17. Further, Section 13–18–17 is likewise completely silent as to the applicability of Section 66–8–102(G).

▪ (28) All parties agree that resolution of this issue requires us to ascertain and effectuate the intent of the legislature. *See State v. Lujan*, 76 N.M. 111, 117, 412 P.2d 405, 409 (1966); *State v. Keith*, 102 N.M. 462, 463, 697 P.2d 145, 146 (Ct.App.), *cert. denied*, 102 N.M. 492, 697 P.2d 492 (1985). As Chief Justice Montgomery so eloquently stated in his parting instructions on statutory interpretation, "[W]e believe it to be the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

> [C]ourts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning.... [I]t is part of the essence of judicial responsibility to search for and effectuate the legislative intent—

the purpose or object—underlying the statute.

*Id.* Chief Justice Montgomery quoted Judge Learned Hand's words that, "[a]s nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation." *Id.* at 354, 871 P.2d at 1360 (quoting *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944)).

▪ (29) It seems that for every rule of statutory construction there is an equal and opposite rule. We are distrustful of any formulaic approach in our efforts to facilitate and promote legislative purpose. The judicial branch simply must select the rationale that most likely accomplishes the legislative purpose—or best fills a void not addressed by the legislature. We assume that the legislature would have expressly stated any intention to add as much as eight habitual-felon years to its fourth-degree-felony enhancement of the misdemeanor of driving while intoxicated without personal injury. Applying Justice Montgomery's instructions to the issue before us leads to the conclusion that those convicted of felony DWI should not be subject to habitual offender enhancement in the *same manner* as other felons.

▪ (30) Statutes that define criminal conduct should be strictly construed and doubts regarding their interpretation or construction should be resolved in favor of lenity. *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853, *cert. denied*, 513 U.S. 936, 115 S.Ct. 336, 130 L.Ed.2d 294 (1994). Similarly, criminal statutes providing for more severe punishment should also be strictly construed. *Id.* Unless the legislature's intention to apply an enhanced sentence is clear, we presume that the legislature did not intend an enhancement. *Swafford v. State*, 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991). As we explained in *Swafford*:

> [I]n the area of criminal punishment, especially with respect to enhanced sentencing, we feel the legislature has an obligation to state its intentions as clearly as possible. When it cannot be said with certainty that the legislature intended to authorize the imposition of an enhanced sentence under particular circumstances, as a corollary to

the rule that criminal statutes must be sufficiently clear and definite to inform a person of ordinary intelligence what conduct is punishable, we presume that the legislature did not so intend.

*Id.* (citation omitted).

(31) In this case, the legislature's intention regarding the application of the enhanced sentence is not clear. The habitual offender statute is highly punitive, *Lujan*, 76 N.M. at 117, 412 P.2d at 409, and it should not apply unless the legislature clearly and specifically states its intention within the body of the statute itself. *See Swafford*, 112 N.M. at 16, 810 P.2d at 1236. The legislature's silence in both Section 31–18–17 and Section 66–8–102(G), is the strongest evidence that the legislature *did not intend* the habitual offender sentences in Section 31–18–17 to apply to felony DWI. The habitual offender statute existed *prior* to Section 66–8–102(G) and the legislature could have clearly made Section 31–18–17 applicable by merely adding a subsection (A)(3) thereto stating: "A felony under 66–8–102(G)." Its silence or failure to so amend Section 31–18–17 speaks more strongly for the proposition that the legislature *did not intend* Section 31–18–17 to apply to fourth-time DWI's. Likewise Section 66–8–102 is completely silent with reference to the applicability of Section 31–18–17 to the newly created fourth degree DWI felonies. Since these statutes are highly punitive, they must be strictly construed, *see Keith*, 102 N.M. at 465, 697 P.2d at 148, and the legislature's silence on the matter more clearly indicates to us its intention not to apply the enhanced sentences. *Swafford*, 112 N.M. at 16, 810 P.2d at 1236.

(32) Because these criminal cases involve the interpretation of two criminal statutes, the existence of any ambiguity as to their intended scope requires us to apply the rule of lenity. *Ogden*, 118 N.M. at 242, 880 P.2d at 853. Application of the rule of lenity requires that criminal statutes be interpreted in the defendant's favor when "insurmountable ambiguity persists regarding the intended scope of [that] statute." *Id.* This rule applies to "those situations in which a reasonable doubt persists about a statute's intended scope even after resort to 'the language and structure, legislative history, and motivating policies' of the statute." *State v. Edmondson*, 112 N.M. 654, 658, 818 P.2d 855, 859 (Ct.App.), *cert. quashed*, 112 N.M. 641, 818 P.2d 419 (1991) (quoting *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980))). We hold that an insurmountable ambiguity exists as to the intended scope of these criminal statutes, and under the rule of lenity it should be resolved in the defendant's favor. *See Ogden*, 118 N.M. at 242, 880 P.2d at 853.

(33) At common law, no number of convictions for any misdemeanor or misdemeanors could ever add up to or become a felony. Even though we agree that the legislature can make multiple convictions for misdemeanor DWI a felony, we do not agree that it intended to make this "new felony" a fourth degree felony for habitual offender sentencing purposes. We view this as a new or special felony. It changes the classification of a criminal act which is now and has been a misdemeanor into a felony *for sentencing purposes only*. We therefore conclude that it is a self-enhancing provision and strictly limited to four or more convictions for DWI. Section 66–8–102(G) contains its own particular enhancement provision by making a misdemeanor a felony because of multiple convictions subjecting the offender to a mandatory six-month "jail" sentence. The most plausible interpretation is that the legislature did not intend to punish fourth-time or more DWI offenders in the same manner as other fourth-degree felons. As we have held, a fourth DWI *is not an element of the DWI felony crime*, and therefore cannot be sentenced as a felony for all purposes, including habitual offender sentencing. The reference to a "jail" term in Section 66–8–102(G) as opposed to a "prison" term, when combined with the six (6) month mandatory sentence provided therein and the legislature's silence about the applicability of that section in Section 31–18–17, is significant. When taken together, it is clear that the legislature did not intend to apply Section 31–18–17 to the new felony created by Section 66–8–102(G) for sentencing purposes.

(34) Here, Gonzales's case clearly illustrates that the legislature did not intend such application. Gonzales was stopped by a police officer because he drove into an alley without signaling. He was then found by field sobriety observation to have been intoxicated within the statutory definition. Because, nearly twenty years ago, he had been convicted of burglary, and was twice guilty of escape from jail, and more recently was in possession of cocaine—none of his offenses against society being of a violent nature—he is mandated to a sentence of nine and one-half years in prison for driving while intoxicated. This is a sentence, not for his prior felonies for which he has paid his debt to society, but for a fourth-time misdemeanor that the legislature has said clearly to be subject only to an eighteen-month enhanced sentence. Without the legislature having expressly indicated to the contrary, we cannot believe it intended to apply its habitual-felon laws to habitual-DWI misdemeanors.

(35) In this matter, it is up to the legislature, if it so chooses, to clarify its intention, making convictions and sentences under Section 66–8–102(G) applicable to sentencing as a habitual felony offender under Section 31–18–17. As presently written, the legislative intent in these highly punitive statutes is ambiguous. We are not a legislative body but an interpretive one. Where, as here, the legislative intent with regard to the applicability of a criminal sentencing statute is unclear and ambiguous, it is for the legislature to clarify its intent and not the prerogative of this Court.

(36) In light of our conclusion that the rule of lenity applies to the construction of these statutes, it is therefore unnecessary to address the issue of cruel and unusual punishment raised by the defendants.

## CONCLUSION

(37) In Defendant Anaya's case, we affirm in part and reverse in part. We affirm Defendant Anaya's sentence of a 6-month jail term, which resulted from the court's suspension of 12 of the 18–month jail sentence for felony DWI, and we reverse the additional 8–year sentence as a habitual offender. In Defendant Gonzales's case, we affirm in part and reverse in part. We affirm the court's sentence of 1½ years for felony DWI and the 364 days for driving on a revoked license, to be served concurrently with the DWI sentence, and we reverse Defendant Gonzales's additional sentence of 8 years as an habitual offender. In the case of Defendant Nakai, the decision of the Court of Appeals, which affirmed his judgment and sentence, is reversed. In Nakai's case, we affirm the court's 18–month sentence for DWI and reverse the court's additional 1–year sentence for being an habitual offender. In Defendant Martinez's case, we affirm in part and reverse in part; we affirm Defendant Martinez's 6–month jail term, which resulted from the court's suspension of 12 months of an 18–month jail sentence, and we reverse the additional 4–year sentence for being adjudged an habitual offender. Defendants Kilgore and Irish each raised issues other than the sentencing issues discussed in this opinion; their cases are remanded to the Court of Appeals for resolution of those issues.

(38) **IT IS SO ORDERED.**

RANSOM and McKINNON, JJ., concur.

BACA, C.J. (dissenting).

MINZNER, J. (concurring in part and dissenting in part).

MINZNER, Justice.

(39) I **CONCUR IN PART** and **DISSENT IN PART.** An opinion in this case was filed originally on May 31, 1996, prior to the retirement of Chief Justice Stanley F. Frost. *See State v. Anaya*, Vol. 35, No. 31, SBB 13 (N.M.1996). In that opinion, this Court unanimously held that the most recent amendment to the basic statute criminalizing driving under the influence of alcohol or drugs (DWI), *see* NMSA 1978, § 66–8–102 (Repl.Pamp.1994) (creating felony DWI), did not alter the elements required to establish the offense of DWI and thus that proof of prior convictions is not an element of felony DWI. Today the Court reaffirms that holding in the opinion authored by Justice Franchini. I concur in that portion of the opinion filed today. However, the Court also concludes that the Legislature did not intend

that defendants convicted of felony DWI should be subject to enhancement under NMSA 1978, § 31–18–17 (Repl.Pamp.1994) (authorizing enhancement of a felony conviction and providing different levels of enhancement for various numbers of prior felony convictions). For the following reasons, I respectfully dissent from that portion of the opinion.

(40) Defendants argue that such enhancement would constitute an impermissible double enhancement. Defendants note that conviction under the felony DWI statute itself involves an enhancement from misdemeanor to felony. They argue that a second enhancement as a habitual offender is improper in the absence of clear evidence that the Legislature intended to authorize that result. The State, on the other hand, asserts that there is no conflict between Section 66–8–102(G) and Section 31–18–17 (the habitual offender statute) and that the plain language of these statutes mandates application of both enhancements. The State points out that Section 66–8–102(G) makes a specific reference to NMSA 1978, § 31–18–15 (Repl. Pamp.1994), the felony sentencing provision. Section 31–18–15 in turn refers to Section 31–18–17.

(41) I continue to believe, as I did in May, that the State has the better argument. Nothing in the motion for rehearing has persuaded me that this Court misapprehended the Legislature's intent in the opinion filed May 31. *See generally* Rule 12–404(A) NMRA 1996 ("The motion [for rehearing] shall state ... the points of law or fact which in the opinion of the movant the court has overlooked or misapprehended.")

## I.

(42) All parties agree that resolution of this issue requires us to ascertain and effectuate the intent of the Legislature. *See State v. Lujan,* 76 N.M. 111, 117, 412 P.2d 405, 409 (1966); *State v. Keith,* 102 N.M. 462, 463, 697 P.2d 145, 146 (Ct.App.), *cert. denied,* 102 N.M. 492, 697 P.2d 492 (1985). Four fundamental principles of statutory interpretation are relevant. First, in discerning legislative intent, courts rely primarily upon the language used by the Legislature. *E.g., V.P.*

*Clarence Co. v. Colgate,* 115 N.M. 471, 473, 853 P.2d 722, 724 (1993). Second, courts will give unambiguous statutes effect as written. *Id.* Third, courts will, if possible, apply two statutory provisions so as to give effect to each and avoid conflicts between them. *See State ex rel. Quintana v. Schnedar,* 115 N.M. 573, 575–76, 855 P.2d 562, 564–65 (1993). Fourth, courts will presume that the Legislature acts "with full knowledge of relevant statutory and common law." *Id.* at 575, 855 P.2d at 564. Each of these tenets has been frequently repeated by this Court and is firmly established in our jurisprudence. Application of these principles to the issue before us leads to the conclusion that those convicted of felony DWI should be subject to habitual offender enhancement in the same manner as other felons.

(43) The majority suggests that there is no particular approach that enables us "to facilitate and promote legislative purpose." Opinion at 232. The majority states that "[t]he judicial branch simply must select the rationale that most likely accomplishes the legislative purpose—or best fills a void not addressed by the legislature." *Id.* The majority assumes "that the legislature would have expressly stated any intention to add as much as eight habitual-felon years to its fourth-degree-felony enhancement of the misdemeanor of driving while intoxicated without personal injury." *Id.* I think that in making such an assumption, the majority has decided the case. While I agree that there may be no particular approach that enables us to determine the legislature's intent in every case that might be brought to us, I do not believe that there are not some approaches that are helpful sometimes nor do I believe that there is no useful approach in this case. Rather, I think the available approaches yield the same result and that the majority's assumption about the Legislature's intent is unwarranted.

(44) The Legislature might have made its intention to permit enhancement of a felony DWI conviction under Section 31–18–17 express and thus clearer. Nevertheless, based on the language and structure of the relevant statutes, keeping in mind prior case law interpreting Section 31–18–17 and cases from

other jurisdictions, and considering legislative action in response to older cases interpreting predecessor statutes, I believe we should conclude that the Legislature intended the habitual offender enhancement to apply.

## A. The Language and Structure of the Relevant Statutes

(45) In addition to their other arguments, Defendants assert that a felony DWI conviction should be treated differently from other felony convictions for sentence enhancement purposes because DWI is a misdemeanor that becomes felonious solely by virtue of repetition. In effect, Defendants argue that felony DWI is not a "real felony." Defendants offer very little authority to support this proposition, and the language of the DWI statute does not permit the distinction.

(46) The felony provision in our DWI statute provides: "Upon a fourth or subsequent conviction under this section, an offender *is guilty of a fourth degree felony,* as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a *jail* term of not less than six months which shall not be suspended or deferred or taken under advisement." Section 66–8–102(G) (emphasis added). Section 31–18–15 provides that the basic sentence for a fourth-degree felony is 18 months' imprisonment, subject to enhancement or mitigation by up to one-third. Section 31–18–15 contains the same phrase contained in Section 31–18–17: "person . . . convicted of a noncapital felony." Section 31–18–17 further provides an increased sentence for "[a]ny person convicted of a noncapital felony in this state . . . who has incurred one prior felony conviction." Section 31–18–17(B).

(47) I have considered the possibility that Defendants have not been "convicted" of a felony within the meaning of Section 31–18–17 because each was convicted initially of a misdemeanor, and I have viewed the existence of prior convictions not as elements of the offense of felony DWI, but rather as facts requiring an enhanced penalty under Section 66–8–102(G). That is, I have considered the possibility that Defendants were sentenced on the basis of their status as habitual offenders rather than convicted of a felony

within the meaning of Section 31–18–17. However, because Section 66–8–102(G) refers to Section 31–18–15, which itself applies only to a person convicted of a felony, I think it would be unduly technical to refuse to apply Section 31–18–17 on that basis. The wording the Legislature used is not as clear as it might have been, but I think it is clear enough to preclude application of the rule of lenity. Interpreting the plain language of Section 66–8–102(G) together with that of Section 31–18–15, I conclude that the Legislature intended felony DWI to be punished by a basic sentence of 18 months, 6 of which must be served.

(48) Defendants argue that the Legislature's use of the word "jail" in Section 66–8–102(G) evinces an intent to punish persons convicted under that statute by incarceration in county jails and that the maximum permissible sentence is therefore less than one year. *See* NMSA 1978, § 31–20–2 (Repl.Pamp. 1994) (providing that persons sentenced to less than one year are to be confined in the county jail; those sentenced to one year or more are to be confined in a correctional facility); *see also State v. Ruiz,* 109 N.M. 437, 438, 786 P.2d 51, 52 (Ct.App.1989), *cert. denied,* 109 N.M. 419, 785 P.2d 1038 (1990). Defendants' argument on this point does not withstand analysis. If the presence of the word "jail" evinces legislative intent to set the maximum punishment at less than one year, then Section 66–8–102(G)'s reference to Section 31–18–15 becomes superfluous. Courts will avoid an interpretation that renders a statutory provision surplusage. *Vaughn v. State Taxation & Revenue Dep't,* 98 N.M. 362, 366, 648 P.2d 820, 824 (Ct.App. 1982). Moreover, under Defendants' theory, the maximum sentence for a fourth offense would be the same (364 days) as for a second or third offense. *See* § 66–8–102(F). The only difference in punishment would be that a fourth offense would involve a mandatory 6-month jail term that could not be suspended or deferred. If the Legislature intended that this should be the only difference between third and fourth DWI offenses, then there would be no point in designating fourth DWI offenses as felonies.

(49) The problem with Defendants' argument that fourth offense DWI is not a "real felony" is that the offense is a felony under all of the recognized definitions of felony. At common law, an offense is a felony if it may be punished by death, imprisonment for more than one year, or imprisonment in the state prison. 1 Charles E. Torcia, *Wharton's Criminal Law* § 19 (15th ed. 1993). Some courts have defined felony in yet another manner: An offense is a felony if it has been so designated by the Legislature. *See Mack v. State*, 312 A.2d 319 (Del.Super.Ct.1973). Our Legislature has embraced two of these three definitions.

(50) The Criminal Procedure Act defines felony as "any crime so designated by law or if upon conviction thereof a sentence of death or imprisonment for a term of one year or more is authorized." NMSA 1978, § 31–1–2(D), (K) (Repl.Pamp.1984);[1] *see also* § 31–18–17(A)(2)(b), (c). The Legislature has designated fourth-offense DWI as a felony, *see* § 66–8–102(G), punishable by up to 2 years' imprisonment, *see* § 31–18–15 (prescribing the punishment for fourth-degree felonies as a basic sentence of 18 months, which can be aggravated by up to one-third). Furthermore, a fourth-offense DWI may result in incarceration in the state prison. *See* § 31–20–2(A) (providing that persons sentenced to "imprisonment for a term of one year or more" shall be imprisoned in a corrections facility); *see also Ruiz*, 109 N.M. at 438, 786 P.2d at 52. Thus, fourth-offense DWI constitutes a felony under any of the three recognized definitions of felony. Apart from these accepted approaches, I am not aware of any other method of distinguishing between felonies and misdemeanors. I conclude that fourth-offense DWI constitutes a "felony" as that term is used in the habitual offender statute. *Cf. State v. Charlton*, 115 N.M. 35, 40, 846 P.2d 341, 346 (Ct.App.1992) (stating that the firearm enhancement provision applies to all noncapital felonies), *cert. denied*, 114 N.M. 577, 844 P.2d 827 (1993).

(51) In short, the presence of the word "jail" in Section 66–8–102(G) is insufficient evidence that fourth-offense DWI's should be punishable by less than one year imprisonment and that they are therefore not felonies. This interpretation is contrary to the statute's express designation of the offense as a "felony," as well as the statute's reference to Section 31–18–15. A more plausible interpretation is that the Legislature intended a fourth-offense DWI to constitute a fourth-degree felony to be punished in the same manner as other fourth-degree felonies. Accordingly, I would hold that a conviction under Section 66–8–102(G) constitutes a "felony conviction" within the meaning of the habitual offender statute. Any doubt about the language used is eliminated when one considers prior New Mexico case law, changes in the habitual offender statute as a result of that case law, and cases from other jurisdictions.

**B. Prior Case Law**

(52) In arguing that double enhancement is impermissible under New Mexico law, Defendants cite a line of cases going back to this Court's decision in *Lujan*, 76 N.M. at 111, 412 P.2d at 405. In *Lujan* the Court convicted the defendant of a violation of the Narcotic Drug Act in which the defendant had two prior felony convictions—one drug-related and one not. The trial court sentenced him under a provision of the Narcotic Drug Act that provided more severe penalties for second and subsequent violations of the Act. *See* NMSA 1953, § 54–7–15(B). Additionally, the trial court sentenced the defendant as a third-time felon pursuant to the habitual offender statute. In overturning that sentence, this Court held that the defendant could not be subject to enhanced sentences under both the Narcotic Drug Act and the habitual offender statute. This conclusion rested on a determination that the provisions

---

1. The statutory definition of felony appears in the Criminal Procedure Act. The habitual offender statute, on the other hand, is part of the Criminal Sentencing Act, NMSA 1978, §§ 31–18–12 to –24 (Repl.Pamp.1994 & Cum.Supp.1996). Moreover, Section 66–8–102(G) appears in the Motor Vehicle Code. While the statutory definition of "felony" that appears in the Criminal Procedure Act may not control the meaning of that term whenever it appears in other statutes, it supports the construction of Section 66–8–102(G) as increasing punishment by classifying a fourth or subsequent DWI conviction as a felony.

of the two statutes were in conflict and could not be reconciled:

> The enhancement provisions of the Narcotic Drug Act differ appreciably from the enhancement provisions of the Criminal Code. In § 54–7–15(C) of the Narcotic Drug Act, there is provision for "the third or subsequent offense." [2] But [the habitual offender statute] provides life imprisonment as the penalty for conviction for a fourth felony, which would qualify only as a "subsequent offense" under the Narcotic Drug Act.
>
> While the habitual criminal statute . . . does not consider a case where the offender is a minor, § 54–7–15(D), supra, provides for a penalty of a fine up to $10,000 and imprisonment for 20 years to life, in case of an adult offender. The latter portion of § 54–7–15 provides for hospitalization in certain cases, as well as for the disallowance of any suspension or parole until the minimum imprisonment provided for the offense has been served. The habitual criminal statute has no such provision. These factors indicate to us that the legislature intended the "object" of providing special punishment for violators of the Narcotic Drug Act when it passed § 54–7–15, supra, and a different "object" when it passed [the habitual offender statute].

*Lujan*, 76 N.M. at 116, 412 P.2d at 408 (citation omitted). In short, the *Lujan* Court concluded that the two enhancement provisions—the habitual offender statute and that in the Narcotic Drug Act—were in conflict. The Court found that it could not apply both statutes in a manner that would give effect to all of the provisions of each. Accordingly, this Court applied the more specific statute, the Narcotic Drug Act. *Id.* at 117, 412 P.2d at 408–09. This Court's decision in *Lujan* did not, as Defendants suggest, rest on the notion that multiple enhancements are always impermissible. Rather, it rested upon the principle that, when there is conflict between a specific and a general statute, courts will give effect to the specific statute. That rule is applicable only when conflict cannot be avoided. *See State v. Gabaldon*, 92 N.M. 230, 234, 585 P.2d 1352, 1356 (Ct.App.) ("the special-general statute rule comes into play only when the two statutes conflict and cannot be harmonized"), *cert. denied*, 92 N.M. 260, 586 P.2d 1089 (1978); *State v. Roland*, 90 N.M. 520, 523, 565 P.2d 1037, 1040 (Ct. App.) (second conviction of armed robbery, enhanced to first degree felony within the armed robbery statute, may be further enhanced under the habitual offender statute because the two statutes do not conflict), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977). Here there is no irreconcilable conflict.

(53) Defendants further rely upon a line of Court of Appeals cases that has grown out of *Lujan*. These cases in fact support application of the habitual offender statute under the circumstances presented by this appeal.

(54) In *Keith* the trial court convicted the defendant of armed robbery, and because it was his second armed robbery conviction, he was guilty of a first-degree felony. 102 N.M. at 463, 697 P.2d at 146. *See* § 30–16–2. The trial court sentenced the defendant for a first-degree felony and then enhanced his sentence pursuant to the habitual offender statute. The trial court based the enhancement on two prior felony convictions—the earlier armed robbery conviction and a burglary conviction. The Court of Appeals, relying on *Lujan*, held that the first armed robbery conviction could not be a basis for enhancement under both the armed robbery and the habitual offender statutes. However, the Court did not hold that the habitual offender statute was inapplicable. To the contrary, the *Keith* court made it clear that the sentence was subject to enhancement under the habitual offender statute for the prior burglary conviction. *Id.* at 465, 697 P.2d at 148. Accordingly, the *Keith* court concluded that the defendant had one—instead of two—prior felonies for purposes of the habitual offender statute.

---

**2.** C. For the third or subsequent offense, or if the offender shall previously have been convicted two [2] or more times in the aggregate of any violation of the laws of the United States or any state, territory or district of the United States, relating to narcotic drugs, or marijuana, the offender shall be fined not less than two thousand dollars ($2,000) and shall be imprisoned not less than ten [10] years nor more than forty [40] years.

*Lujan*, 76 N.M. at 115, 412 P.2d at 407 (quoting NMSA 1953, § 54–7–15(C)).

(55) The Court of Appeals relied upon *Keith* in *State v. Haddenham,* 110 N.M. 149, 793 P.2d 279 (Ct.App.), *cert. denied,* 110 N.M. 72, 792 P.2d 49, *and cert. denied,* 110 N.M. 183, 793 P.2d 865 (1990). *Haddenham* involved a prosecution for the crime of felon in possession of a firearm, an essential element of which is that the defendant previously have been convicted of a felony. The *Haddenham* Court held that the State may not use the fact of the prior conviction both to prove that element of the crime and as a basis for enhancement under the habitual offender statute. *Id.* at 152–53, 793 P.2d at 282.

(56) The Court of Appeals explicitly recognized the limited scope of the *Keith–Haddenham* line of cases in *State v. Peppers,* 110 N.M. 393, 796 P.2d 614 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990). As the *Peppers* court noted, these precedents stand for the limited proposition that the same fact may not be used twice, both as an element of the crime and as a basis for enhancement *or* as a basis for two separate enhancements, unless the Legislature specifically authorizes such double use. *Id.* at 401, 796 P.2d at 622. These decisions do not represent, as Defendants suggest, a broad prohibition against double enhancement.

(57) *Keith, Haddenham,* and *Peppers* do not preclude double enhancement on the facts of this case. Each of the two enhancements—under the DWI statute and under the habitual offender statute—rests upon different facts. The basis for the enhancement from misdemeanor DWI to felony DWI is the fact of three or more prior DWI convictions. Prior DWI convictions do not contribute to the habitual offender enhancement. In contrast, the basis for the habitual offender enhancement is the existence of prior non-DWI felony convictions. Prior felony convictions in no way contribute to the enhancement from misdemeanor DWI to felony DWI. Thus each enhancement rests on distinct facts—one on prior misdemeanor DWI's and the other on prior felonies. Such dual enhancement is permissible under the *Keith–Haddenham–Peppers* line of decisions. *See State v. Yparrea,* 114 N.M. 805, 808, 845 P.2d 1259, 1262 (Ct.App.1992), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993); *State v. Hubbard,* 113 N.M. 538, 541, 828 P.2d 971, 974 (Ct.App.), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992); *Peppers,* 110 N.M. at 401, 796 P.2d at 622; *Keith,* 102 N.M. at 465, 697 P.2d at 148.

## C. Legislative Action in Response to Our Case Law

(58) The line of judicial decisions that rejected enhancement under both the Controlled Substances Act and the habitual offender statute provides no support to Defendants' position. As explained above, this Court determined in *Lujan,* 76 N.M. at 117, 412 P.2d at 408–09, that the sentence of a defendant convicted for a violation of the Narcotic Drug Act could not be enhanced under the general habitual offender statute. The *Lujan* decision rested upon the conclusion that the two enhancement schemes were in conflict; accordingly, the specific statute prevailed over the general statute.

(59) Following our decision in *Lujan,* the Legislature repealed the Narcotic Drug Act and replaced it with the Controlled Substances Act (the CSA), and thereafter the Court of Appeals decided *State v. Alderete,* 88 N.M. 150, 538 P.2d 422 (Ct.App.1975). *Alderete* involved the issue of whether a defendant's third conviction under the CSA for felony possession of heroin was subject to enhancement pursuant to the general habitual offender statute. The *Alderete* court concluded that *Lujan* was inapplicable because there was not a prior drug-related conviction involved and because the CSA did not specify that successive convictions for possession of heroin should involve enhancement. 88 N.M. at 151, 538 P.2d at 423. Moreover, the Court reasoned that there was no conflict between the CSA and the habitual offender statute as there had been in *Lujan. Id.* at 151–52, 538 P.2d 422. Nevertheless, the *Alderete* court held that enhancement under the habitual offender statute was improper. In reaching this conclusion, the Court recognized that (1) the CSA provided for enhanced penalties for repeated possession convictions for certain drugs, but not for heroin; and (2) in enacting the CSA, the Legislature "substantially re-

duced the penalty for all possessory offenses," *id.* at 152, 538 P.2d at 424, thus evincing an intent to punish drug possession offenses less severely than had been the case under the former Narcotic Drug Act. On the basis of these grounds as well as the CSA's legislative history, the Court concluded that "the Legislature did not intend that the habitual offender law was to apply to second or subsequent [convictions for possession of heroin]." *Id.; see also State v. Heyward*, 90 N.M. 780, 781–82, 568 P.2d 616, 617–18 (Ct.App.1977) (relying upon *Alderete* to reach the same result under factually similar cases).

(60) Viewed broadly, *Lujan, Alderete,* and *Heyward* might be seen as standing for the principle that the habitual offender statute is inapplicable whenever the Legislature has devised a specific enhancement scheme for a narrow class of crimes. *But see Roland,* 90 N.M. at 522–23, 565 P.2d at 1039–40 (holding habitual offender statute applicable to armed robbery conviction, even though armed robbery statute contained its own enhancement). Under such a view, application of the habitual offender statute would be inappropriate here where the Legislature has provided in the Motor Vehicle Code for enhanced punishment of repeat DWI offenses. Even under such an expansive view of these cases, a 1983 amendment to the habitual offender statute precludes application of such a rule to this case.

(61) The Legislature enacted the current version of our habitual offender statute in 1977 as part of the Criminal Sentencing Act. In its original form, the statute provided for an enhanced penalty for "[a]ny person convicted of a non-capital felony in this state who has incurred [one, two, three or more] prior felony convictions." 1977 N.M. Laws, ch. 216, § 6(B), (C), (D). This language is similar to the language that appeared in the earlier version of the habitual offender statute that was in effect when *Lujan, Alderete,* and *Heyward* were decided. *See* 1963 N.M.Laws, ch. 303, § 29–5. In 1983, the Legislature amended this language by inserting the phrase "whether within the Criminal Code or the Controlled Substances Act or not" immediately after the phrase "convicted

of a noncapital felony in this state." 1983 N.M. Laws, ch. 127, § 1. The presence of this phrase in our current statute thus distinguishes it from the statute that was in effect when *Lujan, Alderete,* and *Heyward* were decided. *See generally Minner v. Kerby,* 30 F.3d 1311, 1317 (19th Cir.1994) (New Mexico habitual offender statute could be applied to defendant convicted of narcotics offense, because of 1983 statutory amendment to habitual offender statute).

(62) The 1983 amendment thus provides an important indicator of legislative intent that was absent when these three cases were decided. The amendment's reference to the Controlled Substances Act indicates that the Legislature intended to overrule *Lujan, Alderete,* and *Heyward.* In view of the Legislature's apparent rejection of these cases, they provide no basis for a general rule that the habitual offender statute is inapplicable whenever the Legislature has devised an enhancement scheme for a specified class of crimes. The statute's language has a history that is relevant in understanding the Legislature's intent. As a result of the 1983 amendment, the current statute is not as flexible as the statute *Lujan, Alderete,* and *Heyward* construed and applied. The Legislature's use of the phrase "whether within the Criminal Code or the Controlled Substances Act or not" does not permit the inference that this provision applies to some, but not all, felonies. Indeed, it is difficult to imagine more comprehensive language. I presume that the Forty–First Legislature was aware of Section 31–18–17(B)'s comprehensive language when it drafted the felony DWI statute. *See Schnedar,* 115 N.M. at 575, 855 P.2d at 564. I would therefore conclude that the Legislature intended that persons convicted of felony DWI should be subject to the provisions of New Mexico's habitual offender statute in the same manner as other felons.

**D. Cases from Other Jurisdictions**

(63) Appellate courts in at least six states have recently upheld the application of habitual offender enhancements under circumstances similar to those presented by this appeal. *See State v. Campa,* 168 Ariz. 407, 814 P.2d 748, 751 (1991) (en banc); *Brown v.*

*State,* 475 N.W.2d 3, 5 (Iowa 1991); *Corman v. Commonwealth,* 908 S.W.2d 122, 123–24 (Ken.Ct.App.1995); *People v. Bewersdorf,* 438 Mich. 55, 475 N.W.2d 231, 237–38 (1991), *cert. denied,* 502 U.S. 1111, 112 S.Ct. 1214, 117 L.Ed.2d 452 (1992); *State v. Ewanchen,* 799 S.W.2d 607, 609–10 (Mo.1990) (en banc); *State v. Brooks,* 137 N.H. 541, 629 A.2d 1347, 1349 (1993). As in New Mexico, the statutory schemes in each of these states provide for enhancement, on the basis of repetition, of DWI offenses from misdemeanor to felony status. Each of these states also has a general habitual offender statute that provides for enhanced punishment for multiple felony convictions.

(64) The Supreme Courts of Arkansas, Indiana, and Nebraska, on the other hand, have reached a contrary result. *Cf. Freeman v. State,* 658 N.E.2d 68 (Ind.1995) (no enhancement under general habitual substance offender statute of repeat conviction for operating a vehicle while intoxicated) *with Stanek v. State,* 603 N.E.2d 152 (Ind.1992) (no enhancement under general habitual offender statute for conviction of habitual traffic law violator). *See also Lawson v. State,* 295 Ark. 37, 746 S.W.2d 544 (1988); *State v. Chapman,* 205 Neb. 368, 287 N.W.2d 697 (1980). However, the language of the statute at issue in *Chapman* distinguishes that case from the present appeal. The Nebraska felony DWI statute provided a maximum punishment of three years for third or *subsequent* offenses. This language indicated to the Court that the Legislature intended the punishment of felony DWI to be the same, irrespective of the number of a defendant's felony DWI convictions. The Nebraska Supreme Court recognized that enhancement of successive felony DWI convictions under Nebraska's habitual offender statute would be inconsistent with this language. *See* 287 N.W.2d at 699. I discern no similar legislative pronouncement in New Mexico's felony DWI statute. To the contrary, our felony DWI statute provides that, upon conviction, "an offender is guilty of a fourth degree felony, as provided in Section 31–18–15." Section 66–8–102(G). Section 31–18–15(A)(6) in turn provides that the appropriate sentence for a fourth degree felony is 18 months' imprisonment "unless the court alters such sentence pursuant to

the provisions of [the habitual offender statute]." Section 31–18–15(B).

(65) In fact, the legislative intent in *Chapman* is reminiscent of that in *Lujan.* As in *Lujan,* the more specific statute provided a maximum penalty for the offense prescribed, and thus it was viewed as being in conflict with the more general statute. Under those circumstances, this Court held that the more specific statute controlled. *Lawson* is similar.

(66) A close examination of Indiana's comprehensive sentencing statute reveals a more complex legislative purpose than discernible in New Mexico's statutes. Indiana's laws dictate a progressive punishment scheme for repeat DWI offenders. *Freeman,* 658 N.E.2d at 70–71; *see* Ind.Code Ann. § 9–30–5–3 (Michie 1991) (designating felony status to second or subsequent DWI conviction within five years); Ind.Code Ann. § 9–30–10–4 (Michie 1991 & Cum.Supp.1996) (habitual traffic violator). Additionally, a separate but similar scheme exists for punishing "habitual substances offenders." Ind.Code Ann. § 35–50–2–10 (Michie 1994 and Cum.Supp. 1996). Since "substance offense" as broadly defined includes the crime of DWI, a person convicted of DWI may arguably be subject to the progressively severe punishments of both statutes. Because "[t]he two punishment schemes ... are markedly different," the Indiana court concluded that the two statutes cannot be harmonized, and as such the more specific statute should supersede the general one. *Freeman,* 658 N.E.2d at 71. To the contrary, New Mexico's two statutes that enhance punishment do not conflict. When read together, the DWI statute imposes increased punishment for repeated DWI conduct and characterizes a fourth or subsequent conviction as a fourth degree felony. The habitual offender statute contemplates prior non-DWI-related offenses as a basis for enhanced punishment of a noncapital felony. As such, the statutes are complementary rather than conflicting.

(67) *Freeman* and *Stanek* might be read to provide a rule that discrete and independent enhancement statutes will be construed as specific and controlling over more general

habitual offender statutes. *See Stanek*, 603 N.E.2d at 153–54. However, in New Mexico, unlike Indiana, there is a specific reference to the sentencing act within the more specific statute containing a particular enhancement, and there is no apparent conflict between the two statutes. *Cf. Bown*, 475 N.W.2d at 5–6 (refusing to apply "rule of statutory construction that specific statutes exclude application of general statutes," because no "stacking of sentences" occurred). Rather, New Mexico's statutory scheme is analogous to that of Arizona, *see Campa*, 814 P.2d at 751, and Iowa, *see Bown*, 475 N.W.2d at 6. Although "a general rule does not really emerge from these cases because of the differences in the individual state statutes interpreted," *Bown*, 475 N.W.2d at 6, I am persuaded that more recent decisions are moving away from the older general rule reflected in *Lawson* and *Chapman. Id.* I think it is more likely than not that the Legislature adopted recent changes in New Mexico's DWI law based on the law of other states. I find support for this result in cases construing similar schemes in other states.

### E. Rule of Lenity

(68) Defendants also rely on the cases from other jurisdictions, cited above for the proposition that, in interpreting criminal statutes, the rule of lenity should preclude application of both enhancements. The majority opinion argues that the rule of lenity applies. I respectfully disagree.

(69) We have stated that the rule of lenity only applies in situations where overwhelming ambiguity persists or evidence of conflict creates a doubt as to legislative intent after considering the policies, language, structure, and history of the legislation. *See State v. Ogden*, 118 N.M. 234, 880 P.2d 845, *cert. denied*, 513 U.S. 936, 115 S.Ct. 336, 130 L.Ed.2d 294 (1994). In such a scenario, the rule operates to prevent enforcement of the harsher result. *See Keith*, 102 N.M. at 465, 697 P.2d at 148. While sound policy underlies the rule of lenity, we may not read ambiguity into the statutes for the sole purpose of applying the rule. "The rule is not applicable simply because it is possible to construe a criminal statute more narrowly

than urged by the State." *State v. Rowell*, 121 N.M. 111, 908 P.2d 1379 (1995). In these cases, the two statutes at issue do not conflict, but operate together harmoniously. Thus the rule of lenity on which Defendants have relied ought not be applied. *See generally id.; Yparrea*, 114 N.M. at 808, 845 P.2d at 1262 (discussing the rule of lenity). The Legislature's designation of felony status to DWI offenders implicates the habitual offender statute to effectuate a policy of punishing as repeat felons incorrigible drunk drivers with prior felony convictions. Application of the rule of lenity defeats the legislature's apparent intent.

### F. Cruel and Unusual Punishment

(70) Defendants finally argue that enhancement under both the DWI statute and the habitual offender statute constitutes cruel and unusual punishment. *See* U.S. Const. amend. VII; N.M. Const. art. II, § 13. Defendants appeal from the following sentences: Anaya 9½ years (1½ years of which was suspended); Gonzales 9½ years; Martinez 5½ years (1½ years of which was suspended); and Nakai 2½ years.

(71) Defendants recognize that the imposition of penalties is a legislative function that will normally receive deference from the courts. However, relying on *State v. Arrington*, 115 N.M. 559, 855 P.2d 133 (Ct.App. 1993), they argue that a sentence of 9½ years for an offense that would be a misdemeanor but for its repetition constitutes cruel and unusual punishment. The *Arrington* court recognized that in "exceedingly rare cases" a term of imprisonment may be inherently cruel. *Id.* at 561, 855 P.2d at 135. Accordingly, the *Arrington* court affirmed the trial court's determination that a mandatory prison term that would deprive a severe asthma sufferer of special medical needs would constitute cruel and unusual punishment. *Id.* at 562, 855 P.2d at 136. These cases do not present the sort of "exceedingly rare" circumstances that were present in *Arrington*. Furthermore, this Court has been very reluctant to second-guess the Legislature's judgment concerning the appropriate punishment for a particular crime. *See State v. Archibeque*, 95 N.M. 411, 622 P.2d 1031 (1981) (affirming a sentence of

**34**

life imprisonment, under the former habitual offender statute, upon a conviction for burglary); *see also Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality opinion) (upholding a sentence of life imprisonment without possibility of parole for a conviction of possession of 672 grams of cocaine where defendant had no prior felony convictions). Finally, even in Indiana, which has adopted a rule of construction that favors a more specific over a more general enhancement statute, such arguments have found no sympathy. *See Stanek*, 603 N.E.2d at 154. The argument that Defendants have been the focus of cruel and unusual punishment seems to me to lack support in the case law.

## II.

(72) For all of these reasons I respectfully dissent from the Court's holding on the second issue addressed. However, I concur in the Court's resolution of the first issue.

(73) I believe that Defendant Anaya's judgment and sentence should be vacated and the cause remanded for resentencing. The State having conceded that it failed to prove three prior DWI convictions in sequence, he must be resentenced for misdemeanor DWI. Defendants Kilgore and Irish each raised issues other than the sentencing issues discussed in this opinion. I would remand their causes to the Court of Appeals for resolution of those other issues. I would affirm Defendant Gonzales' judgment and sentence. I would also affirm Defendant Martinez' judgment and sentence. In the case of Defendant Nakai, I would affirm the decision of the Court of Appeals, which affirmed his judgment and sentence.

BACA, C.J., concurs.