# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**_____

**Filing Date:   June 2, 2016**

**NO. S-1-SC-35421**

**LIANE E. KERR, Esquire,**

Petitioner-Pro Se,

v.

**HON. KAREN PARSONS,**
**Chief Judge, Twelfth Judicial District, Div. III**,

Respondent,

and

**SANTIAGO VICTOR CARRILLO,**
**DIANA ATHENA MARTWICK,**
**Twelfth Judicial District Attorney,**
**THOMAS E. CLIFFORD, Secretary,**
**New Mexico Department Finance and**
**Administration, COMMISSION FOR THE**
**LAW OFFICE OF THE PUBLIC DEFENDER, and**
**JORGE ALVARADO, Chief, Law Office of the**
**Public Defender,**

Real Parties in Interest.

**ORIGINAL PROCEEDING**

Liane E. Kerr
Albuquerque, NM

for Petitioner-Pro Se


Hector H. Balderas, Attorney General
James C. Jacobsen, Assistant Attorney General
Albuquerque, NM

for Respondent


Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Real Party in Interest Santiago Victor Carrillo


Office of the District Attorney
Diana Athena Martwick, Special Prosecutor
Matthew R. Wade
Khouldoud E. Pearson
Carrizozo, NM

for Real Party in Interest Diana Athena Martwick


New Mexico Department of Finance and Administration
Rebecca Barbara Jackson
Paul M. Kippert
Santa Fe, NM

Sheehan & Sheehan, P.A.
Barbara G. Stephenson
Leah M. Stevens-Block
Albuquerque, NM

for Real Party in Interest Thomas E. Clifford

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP
Mark H. Donatelli
Marc M. Lowry
Maggie H. Lane
Santa Fe, NM

for Real Party in Interest New Mexico Public Defender Commission

Robert A. Mead, Special Assistant Attorney General
Karl Erich Martell, Special Assistant Attorney General
Santa Fe, NM

for Real Party in Interest Jorge A. Alvarado

Hector H. Balderas, Attorney General
Brian Parrish, Assistant Attorney General
Sean Cuniff, Assistant Attorney General
Santa Fe, NM

for Amicus Curiae Legislative Finance Committee of the New Mexico Legislature

**OPINION**

**NAKAMURA, Justice.**

{1}     On petition for a writ of superintending control, we are called upon to review an order issued by the Twelfth Judicial District Court in the criminal prosecutions against Santiago Carrillo.  The district court's order held that the flat-fee rates paid to indigent defense contract counsel by the Law Office of the Public Defender (LOPD) contravened the right to counsel and nullified the Legislature's prohibition of the payment of hourly rates to contract counsel.  The district court also issued a remedial order directing the LOPD to pay every contract attorney no less than $85 per hour and the State to provide the funding necessary for the LOPD to render such compensation.  We hold that the General Appropriations Act of 2015, Chapter 101, Section 4(C) of New Mexico Laws of 2015, does not violate the right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution.  We do not presume that the flat-fee rates paid to Carrillo's contract attorney violate his right to counsel.  Accordingly, we grant the writ of superintending control, vacate the district court's orders, and remand to the district court with instructions to proceed with the State's prosecutions against Carrillo.

**I.      BACKGROUND**

## A.    The funding of public defender contract attorneys

{2}    In all criminal prosecutions, the accused has the right to the effective assistance of counsel. U.S. Const. amend. VI; N.M. Const. art. II, § 14. The Indigent Defense Act, NMSA 1978, Sections 31-16-1 to -10 (1968), and the Public Defender Act, NMSA 1978, Sections 31-15-1 to -12 (1973, as amended through 2014), frame the statutory scheme by which the State ensures that counsel is provided to indigent defendants. These statutes effectuate the constitutional right of counsel for the defense of criminal charges. *State v. Rascon*, 1976-NMSC-016, ¶ 5, 89 N.M. 254, 550 P.2d 266.

{3}    Under the Public Defender Act, the district public defender shall represent every person without counsel who is financially unable to obtain counsel and who is charged in any court in the district with any crime that carries a possible sentence of imprisonment. NMSA 1978, § 31-15-10(C) (2001). If the district public defender is unable to represent a person entitled to representation, the district public defender shall notify the chief public defender. § 31-15-10(E). Where the LOPD lacks a district office, or where the chief public defender has been alerted by a district public defender of an inability to represent a person entitled to representation, the chief public defender is required to provide representation by other means. *Id.*; *see also*

NMSA 1978, § 31-15-7(A)(1) (2014). To that end, the LOPD may contract with private attorneys to serve as counsel. *See* § 31-15-7(B)(11). In accordance with the Procurement Code, NMSA 1978, §§ 13-1-28 to -199 (1984, as amended through 2016), the LOPD issues Requests for Proposals to elicit proposals from private attorneys seeking to provide contract counsel. It then selects which candidates will be offered contracts to provide indigent defense services.

{4}     The roles of the legislative and executive branches in funding contract defense counsel are clearly established. The Legislature delegated to the chief public defender the authority to formulate a fee schedule for the compensation of indigent defense contract counsel. § 31-15-7(B)(11). The expenses of the LOPD are "paid by warrants of the secretary of finance and administration, supported by vouchers signed by the chief [public defender] or the chief's authorized representative and in accordance with budgets approved by the state budget division of the department of finance and administration." NMSA 1978, § 31-15-5(B) (2013). Those budgets are funded by appropriation legislation. *See, e.g.*, 2015 N.M. Laws, ch. 101, § 4(C).

{5}     Prior to 2014, the chief public defender had established a flat-fee schedule for contract attorneys in all noncapital cases. In 2014, the rates paid to contract counsel in Lincoln County were as follows: $180 per misdemeanor case, $250 per juvenile case, $540 per fourth-degree felony case, $595 per third-degree felony case, $650 per

3

second-degree felony case, and $700 per first-degree felony case, as determined by the highest degree crime charged.  The Legislature provides the funding for such payments to contract counsel by appropriation legislation.  *See, e.g.*, General Appropriations Act of 2016, H.B. 2, § 4, 52nd Leg., 2nd Sess. (N.M. 2016), *available at* http://www.nmlegis.gov/Sessions/16%20Regular/final/HB0002.pdf (last viewed May 17, 2016).  In the General Appropriations Act of 2014, the Legislature appropriated $10,653,600 to the Public Defender Department for the provision of contractual services.  2014 N.M. Laws, ch. 63, § 4(C).

{6}     We note that on September 2, 2014, the New Mexico Public Defender Commission and the LOPD submitted a budget request for fiscal year 2016.  *See* New Mexico Public Defender Commission FY16 Budget Request, http://nmcdla.org/docs/Budget%20Request%20Narrative%20FY2016.pdf (henceforward "NMPDC FY16 Budget Requestion") (last viewed May 17, 2016). *See also Griego v. Oliver*, 2014-NMSC-003, ¶ 47 n. 7, 316 P.3d 865 ("[T]his Court—or any court, trial or appellate—may take judicial notice of legislative facts by resorting to whatever materials it may have at its disposal establishing or tending to establish those facts." (alteration original)); *Attorney Gen. v. N.M. Pub. Serv. Comm'n*, 1991-NMSC-028, ¶ 24, 111 N.M. 636, 808 P.2d 606 (noting our authority to take judicial notice of agency actions); Rule 11-201 NMRA.  The submission was

4

the Commission's first budget request. The Commission and the LOPD requested over $96 million for the operation of the Public Defender Department. This budget request contemplated an hourly compensation of contract counsel at $85 per hour, and it estimated the costs of such compensation to be $45,726,000—more than four times the 2014 appropriation for contractual services. Around the same time, in November 2014, the LOPD and the Public Defender Commission established an hourly rate for compensation, subject to upper limits, known as "markers," for contract counsel in five counties: Roosevelt County, Lea County, Lincoln County, Luna County, and Eddy County. The LOPD and the Public Defender Commission set hourly rates for the compensation of contract attorneys to ensure the provision of adequate indigent defense counsel in those counties.

{7} The Legislature responded to the LOPD's and the Commission's request of $45,726,000 for contractual services by appropriating $12,840,800 for the same. 2015 N.M. Laws, ch. 101, § 4(C). When making this appropriation the Legislature explicitly provided that "*[t]he appropriations to the public defender department shall not be used to pay hourly reimbursement rates to contract attorneys.*" *Id.* (emphasis added). It appears that the Legislature's condition on the appropriation for contractual services was a reaction to the Commission's large request for contractual

services, which was based on the Commission's plan to compensate contract attorneys at a rate of $85 per hour. For instance, during the May 21, 2015, State Board of Finance Meeting to consider an Emergency Funding Request by the LOPD, Department of Finance and Administration Secretary Thomas Clifford indicated that the Legislature included language in the 2015 appropriations statute to prohibit hourly rates because the Legislature understood that the Commission's plan to pay contract counsel $85 per hour was the predominant cause of the Commission's significant budget request for fiscal year 2016.

{8}     On June 29, 2015, in the matter of *State v. Carrillo*, the Twelfth Judicial District Court decided that the Legislature's requirement that the appropriation designated for contract counsel shall not be used to pay hourly rates violated the right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution. The district court issued an order entitled "Order Declaring Limits for Payment to Contractors in Order for Contractors to Provide Effective Assistance of Counsel," which in relevant part provided:

> The flat fee rates heretofore paid and to be paid to contractors/conflict attorneys by and through the Law Offices of the Public Defender for fiscal years 2016 and preceding fiscal years is not sufficient to comply with *Gideon v. Wainwright*[], 372 U.S. 335 (1963), it is therefore

6

ordered the State properly fund effective assistance of counsel for indigent defendants and is therefore unconstitutional both under the United States Constitution and the New Mexico Constitution;

> The Public Defender Department shall pay to each and every contractor no less than $85.00 per hour plus GRT (gross receipts tax) for the attorney and $35.00 an hour plus GRT for staff, with appropriate markers . . . together with costs of copies and postage to be sent to indigent clients and/or other attorneys and experts, the costs of transportation and overnight stay paid based on the New Mexico State Per Diem rates and rules, and the costs of collect calls from the client to the attorney; so the attorney may have at least the bare minimum of monies to provide the effective representation necessary.

The district court's order in *State v. Carrillo* precipitated the instant petition, and we now turn to that case.

**B.    The district court orders that are the subject of review**

{9}    In the exercise of our power of superintending control, we may take judicial notice of the proceedings in the district court.  Rule 11-201 NMRA; *see also State v. Anaya*, 1997-NMSC-010, ¶ 13, 123 N.M. 14, 933 P.2d 223 ("[W]e may take judicial notice of the record on file in this Court."); *but cf. Richardson Ford Sales v. Cummins*, 1964-NMSC-128, ¶ 5, 74 N.M. 271, 393 P.2d 11 (noting that on appeal the facts necessary to present a question for review must be established by a certified record).  On November 28, 2012, the State filed a criminal complaint against Carrillo, charging him with counts of voyeurism, contrary to NMSA 1978, Section 30-9-20 (2007), possession of a controlled substance, contrary to NMSA 1978, Section 30-31-

23(E) (2011), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2011). On December 21, 2012, Charles Hawthorne filed an entry of appearance to represent Carrillo against the charges. On January 3, 2014, Hawthorn moved to withdraw as Carrillo's counsel because Carrillo had not remained in contact and had not paid Hawthorn. The district court granted that motion on January 6, 2014.

{10} On January 23, 2014, the State filed a criminal information against Carrillo, charging him with criminal sexual penetration in the third degree, contrary to NMSA 1978, Section 30-9-11(F) (2009). Shortly thereafter, on January 28 and 29, 2014, Gary Mitchell entered an appearance to represent Carrillo as contract counsel against both prosecutions.

{11} On April 23, 2014, Carrillo filed a motion in the first case requesting the district court to compel the State to provide sufficient funds to his contract counsel so that his attorney could provide effective assistance and to stay proceedings in the matter until the State provided such funding. The district court understood the motion to pertain to both prosecutions and held hearings on Carrillo's motion on September 23, 2014, and October 1, 2014. The district court issued an interim order on December 4, 2014, making the LOPD a party to the case and requiring the LOPD

to compensate Mitchell a minimum of $85 per hour to represent indigent defendants in all cases assigned to him (including Carrillo's cases), but not to exceed a total compensation per case as set by the markers established by the Commission, on pain of dismissal.

{12}     On December 11, 2014, the LOPD filed an emergency motion to reconsider and to stay the execution of the interim order.   The LOPD argued that the district court's interim order would affect its operations statewide and that it could not immediately implement the order without compromising representation in other counties.  On January 10, 2015, and March 23, 2015, the district court held hearings to consider the LOPD's motion to reconsider and stay.

{13}     On April 15, 2015, Carrillo moved to dismiss his criminal complaint because "no indigent person can be prosecuted unless and until the defendant has an attorney who receives sufficient funds from the State to provide effective assistance of counsel." On June 4, 2015, after he became aware of the Legislature's condition that the appropriation designated for contract counsel should not be used to pay hourly rates, Carrillo moved the district court to declare that the provision contravened his right to the effective assistance of counsel.

{14}     On June 29, 2015, the district court held a hearing on all pending motions.

Shortly thereafter, it issued four orders: *First*, the district court entered an order nullifying the provision of the General Appropriation Act of 2015's prohibition of the payment of hourly rates to contract counsel as violative of the Federal Constitution and the New Mexico Constitution. *Second*, based on its conclusion that the flat-fee rates paid to contract counsel by the LOPD contravene the constitutional guarantee of effective assistance of counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963), the district court ordered the State to "properly fund effective assistance of counsel" and required the LOPD to pay "each and every contractor no less than $85.00 per hour" plus additional monies "so the attorney may have at least the bare minimum of monies to provide the effective representation necessary." *Third*, because the LOPD represented that it could not comply with its orders due to lack of funding, the district court entered an order staying the prosecutions against Carrillo unless and until the State provides the funding and the LOPD pays Carrillo's attorney the amounts ordered by the Court. *Fourth*, the district court ordered the Sheriff of Lincoln County to release Carrillo and imposed conditions on Carrillo's release.

**C.    The petition for an extraordinary writ**

{15}    Liane Kerr is an attorney who has contracted with the LOPD to represent indigent defendants for the past 23 years. On July 17, 2015, she filed a petition in

this Court for a writ of superintending control or alternative writ to vacate the second order the district court issued on June 29, 2015. The petition alleged that because the LOPD lacked the funds to comply with this order, the LOPD's attempt to comply would precipitate insolvency and threaten its ability to honor the contracts of the Petitioner and other contract counsel. The petition named the following real parties in interest: Diana Martwick, the District Attorney for the Twelfth Judicial District; Thomas Clifford, the Secretary of the Department of Finance and Administration; the Commission and its members; and Jorge Alvarado, then the Chief Public Defender. We received responses from each of those parties. We also accepted an amicus curiae brief from the Legislative Finance Committee.

## II.     DISCUSSION

### A.     Our exercise of superintending control

{16}     Article VI, Section 3 of the New Mexico Constitution confers on this Court "superintending control over all inferior courts" and the power to issue "writs necessary or proper for the complete exercise of . . . [our] jurisdiction and to hear and determine the same." "The power of superintending control is the power to control the course of ordinary litigation in inferior courts." *Dist. Court of Second Judicial Dist. v. McKenna*, 1994-NMSC-102, ¶ 3, 118 N.M. 402, 881 P.2d 1387 (internal

quotation marks and citation omitted). In contrast to the writ of prohibition, the writ of superintending control is not limited to the correction of jurisdictional errors. *Albuquerque Gas & Elec. Co. v. Curtis*, 1939-NMSC-024, ¶ 7, 43 N.M. 234, 89 P.2d 615. Where appropriate, the power of superintending control permits this Court's interposition to correct any *specie* of error. *See id.* ¶¶ 7, 12-14. We may exercise our power of superintending control to control the course of ordinary litigation "if the remedy by appeal seems wholly inadequate." *McKenna*, 1994-NMSC-102, ¶ 4. We may also exercise the power of superintending control "where it is deemed to be in the public interest to settle the question involved at the earliest moment." *Griego v. Oliver*, 2014-NMSC-003, ¶ 11, 316 P.3d 865 (internal quotation marks and citation omitted).

{17} The district court's constitutional holding and remedial orders call for the exercise of this power. The Commission's budget request for fiscal year 2016 exceeded $45 million to compensate contract counsel at $85 per hour, and the Legislature appropriated over $12 million for contract counsel in the same time period. Merely looking to the discrepancy between the Legislature's appropriation and the Commission's estimation of what statewide compensation of contract counsel at $85 per hour would require, it is readily apparent that the LOPD's attempt to

comply fully with the district court's order would threaten its ability to perform its duties. Further, the district court's order to stay Carrillo's prosecutions until the State provides the ordered funding and the LOPD pays the ordered funding to Carrillo's contract counsel jeopardizes the administration of criminal justice in New Mexico. It is in the public interest to settle the dispositive issue in this case now. Accordingly, we grant the petition and issue a writ of superintending control.

**B.     Neither the current flat-fee schedule nor the Legislature's prohibition of hourly compensation rates for contract counsel violate Carrillo's right to counsel**

{18}     The parties raise two issues: First, does the current flat-fee schedule for the compensation of contract counsel, solidified by the Legislature's requirement that the LOPD not use the appropriation for contract counsel to pay hourly reimbursement rates, violate the right to counsel as guaranteed by the Federal Constitution and the New Mexico Constitution? Second, did the district court's remedial orders requiring the State to fund compensation to contract counsel at $85 per hour and the LOPD to pay such a rate to Carrillo's counsel contravene the separation of powers as established by Article III, Section 1 of the New Mexico Constitution? Because we decide the former issue, we do not reach the latter.

{19}     In support of the district court's order, Carrillo argues that the current flat-fee

13

arrangement for the compensation of contract counsel impinges upon his right to the effective assistance of counsel. The Commission makes a similar argument to support the district court's order and contends that the current flat-fee scheme violates the right to counsel of any indigent defendant represented by contract counsel. Both Carrillo and the Commission root their arguments in *State v. Young*, 2007-NMSC-058, 143 N.M. 1, 172 P.3d 138, and *United States v. Cronic*, 466 U.S. 648 (1984).

{20} Ordinarily, to make out a claim of ineffective assistance of counsel, a criminal defendant needs to establish both that their counsel's assistance was not objectively reasonable and that but for the counsel's errors, the result of the proceeding would have been different. *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494; *see generally Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). Both Carrillo and the Commission contend that the test for ineffective assistance under *Strickland* is inapposite. We agree. Because the district court stayed the prosecutions against Carrillo, we cannot address whether the results of those proceedings would be different if Carrillo's counsel were paid according to a different compensation formula.

{21} Some circumstances, however, "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at

658; *see also Grogan*, 2007-NMSC-039, ¶¶ 12-13 (noting circumstances where courts may presume prejudice). In certain cases, "the likelihood that any lawyer . . . could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60 (citation omitted). The presumption of prejudice is justified, for example, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659.

{22} In *State v. Young*, this Court applied *Cronic* to presume ineffective assistance of counsel because the attorneys for the defendants in that capital case were "not receiving adequate compensation." 2007-NMSC-058, ¶ 18. In *Young*, we decided in a *specific capital case* that a flat-fee arrangement justified the presumption of ineffective assistance. *Id*. *Young* was "one of the most complex death penalty cases ever tried in New Mexico," and the defendants were appointed contract attorneys who contracted to provide representation through trial for a flat fee of $19,500 for each first-chair attorney and $9,500 for each second-chair attorney. *Id*. ¶¶ 6-7. One attorney estimated that she and her co-counsel would spend a total of 2334 hours on the case and moved to withdraw. *Id*. ¶¶ 9, 12. This Court found "that the attorneys for the defendants . . . [were] not receiving adequate compensation," *id*. ¶ 12, that

15

capital cases are extraordinarily expensive and require specialized skills, *id*. ¶¶ 14-15, and that the *Young* case was "unusually protracted because of its extraordinary complexity," *id.* ¶ 18. This Court concluded that those facts justified "a presumption of ineffective assistance of counsel." *Id.* ¶ 18.

{23}   *Young* guides our review. In *Young*, we expressly noted that the holding was cinched to its facts. *Id.* ¶ 27. *Young* did not hold that a flat-fee arrangement necessarily abridges the right to the effective assistance of counsel in capital cases. *See id.* In fact, we expressly refused "to condemn a flat fee structure or cap in all capital cases." *Id.* ¶ 18. When we expressly refused to presume that a flat fee entails ineffective assistance in all capital cases, we necessarily implied that we would not presume that a flat fee entails ineffective assistance in all criminal cases.

{24}   We find no basis to depart from *Young* now. We cannot assume that any contract attorney in New Mexico who represents an indigent defendant under the current flat-fee arrangement necessarily will be unable "to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Such a presumption is too great a leap from *Young* where we were only willing to presume ineffectiveness based on a flat-fee contract for one extraordinarily complicated capital case. This presumption would also constitute a huge departure from *Cronic*, where the United

States Supreme Court suggested a willingness to presume ineffectiveness under circumstances in which an indigent defendant effectively has no assistance at all. *See id.* We cannot make that leap. In its response to the petition, the LOPD tellingly stated that "Public Defender contractors provide effective assistance of counsel in thousands of cases under the present flat-fee contract." This concession undermines the contention that this Court is justified to assume that an indigent defendant necessarily receives ineffective assistance when represented by contract counsel who is compensated at the current flat-fee rates.

{25}     Carrillo argues that flat-fee contracts are problematic because they "are rife with financial incentives for lawyers to do as little work on cases as possible." But this argument also fails to justify the presumption of ineffective assistance. The first term in the professional service contract that the LOPD offers to contractors requires a contracting attorney to provide legal services in accordance with the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution. We assume that attorneys represent their clients honorably, consistent with both their professional duties and the terms under which they contract with the LOPD to provide indigent defense. *See People v. Doolin*, 198 P.3d 11, 32-33 (Cal. 2009) (finding that the state's lump-sum compensation agreement did not

create a conflict of interest between the defendant and his attorney).  In light of the LOPD's representation that contract counsel provides effective assistance in thousands of cases across the state, we do not think that the current flat-fee structure undermines this assumption.  We find no basis to presume that any indigent defendant currently represented by contract counsel necessarily receives constitutionally deficient assistance.  Accordingly, we will not presume that Carrillo will necessarily receive ineffective assistance because he is represented by contract counsel who is compensated by the current flat-fee arrangement.

{26}   We also note that our refusal to depart from *Young* does not etch into stone the fees currently paid to indigent defense contract counsel.  The Legislature delegated to the chief public defender the authority to formulate a fee schedule for the compensation of contract counsel.  In Chapter 101, Section 4(C) of New Mexico Laws of 2015, the Legislature appropriated funds for contract counsel on the condition that the appropriation not be used to pay fees based on hourly rates.  We note that the Legislature recently carried that condition forward in the General Appropriations Act of 2016. H.B. 2, § 4, 52nd Leg., 2nd Sess. (N.M. 2016), *available at* http://www.nmlegis.gov/Sessions/16%20Regular/final/HB0002.pdf (last viewed May 17, 2016) ("Appropriations to the public defender department shall not be used

18

to pay hourly rates to contract attorneys.").

{27} "We have consistently maintained that the Legislature has the power to affix reasonable provisions, conditions or limitations upon appropriations and upon the expenditure of the funds appropriated." *See State ex rel. Coll v. Carruthers*, 1988-NMSC-057, ¶ 17, 107 N.M. 439, 759 P.2d 1380 (internal quotation marks and citations omitted). On the facts presented, we do not conclude that the Legislature's condition is unreasonable. The chief public defender retains the discretion to formulate a fee schedule that would establish higher flat fees than those currently paid to contract attorneys. Moreover, the Legislature's condition that appropriations for contract counsel not be used to pay hourly rates is not itself constitutionally fixed; it may yet be resolved by the normal democratic process. Therefore, while we appreciate the roles and challenges of the LOPD, the Commission, and contract counsel statewide to effectuate the rights of the criminally accused, we do not see that a constitutional prohibition on flat fees is necessary to ensure those rights.

{28} While we note the Legislature's broad power to appropriate funds and to affix limitations on those appropriations, *see Carruthers*, 1988-NMSC-057, ¶ 17, we also recognize that some limitations on funding for the provision of indigent defense could be so severe as to create a presumption of ineffective assistance of counsel in

particular cases. *See Young*, 2007-NMSC-058, ¶¶ 9-12; *cf. also Lavellee v. Justices in the Hamden Super. Ct.*, 812 N.E.2d 895, 901 (Mass. 2004) (holding that scheme for the provision of indigent defense, including a budget appropriation to fund county bar advocates program, violated the Massachusetts constitutional right to counsel). It is beyond our power to advise the Legislature as to which hypothetical limitations on the funding of indigent defense would engender such a presumption. *See Bell Tel. Labs., Inc. v. Bureau of Revenue*, 1966-NMSC-253, ¶ 39, 78 N.M. 78, 428 P.2d 617. ("This court does not give advisory opinions."). Nevertheless, we confront no obstacle in saying that the rights to the effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution, impose real constraints on the Legislature's exercise of its power to limit the funding necessary to the provision of indigent criminal defense in New Mexico. Today, we hold on the record before us that the General Appropriations Act of 2015, Chapter 101, Section 4(C) of New Mexico Laws of 2015, does not infringe constitutional guarantees to the effective assistance of counsel. Future cases, however, presenting other record facts, could precipitate our duty to enforce those same constitutional rights.

**C.     We do not reach the separation-of-powers issue**

{29} The district court's remedial order that the State fund compensation to contract counsel at $85 per hour and that the LOPD pay such a rate to Carrillo's counsel threatens to intrude into the prerogatives of the coordinate branches of government. Whether the district court's remedial order violates the separation of powers, however, is a more complicated question and involves the subsidiary issue of whether the district court had the inherent power to issue an order to compel funding. *Cf. State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 3, 115 N.M. 573, 855 P.2d 562 ("There is no doubt that the judiciary has the inherent authority to guarantee the enforcement of constitutional civil liberty protections in criminal prosecutions.").

{30} We do not address whether the district court's remedial order contravenes the separation of powers because it is unnecessary to the disposition of this case. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so."). Where there is no violation of a right, a court lacks the power to compel an officer of a coordinate branch of government to perform a duty. *See, e.g., State ex rel. Coll v. Johnson*, 1999-NMSC-036, ¶ 12, 128 N.M. 154, 990 P.2d 1277 ("[A] writ of mandamus is available only to one who has a clear legal right to the performance sought . . . ." (internal quotation marks and citation omitted));

21

*Schein v. N. Rio Arriba Elec. Coop., Inc.*, 1997-NMSC-011, ¶ 22, 122 N.M. 800, 932 P.2d 490 ("Relevant rights and duties must be established before a writ of mandamus can issue."). Hence, only if the current flat-fee arrangement and the General Appropriations Act of 2015, Chapter 101, Section 4(C) of New Mexico Laws of 2015, violated a right held by Carrillo did the district court have the power to issue the remedial order in dispute. Because the current flat-fee arrangement for the compensation of indigent defense contract counsel and the legislation prohibiting hourly reimbursement rates to contract counsel do not violate Carrillo's right to the effective assistance of counsel, we conclude that the district court lacked the power to issue a remedial order directing the LOPD to pay hourly rates and the State to provide additional funding. Accordingly, we need not reach whether that order violated the separation of powers.

**CONCLUSION**

{31}    For the foregoing reasons, we grant the petition for a writ of superintending control and vacate the following orders of the district court: the December 2, 2014, Interim Order; the June 29, 2015, Order Declaring the Prohibition Against Hourly Rates to Contractors Unconstitutional; the June 29, 2015, Order Declaring Limits for Payment to Contractors in Order for Contractors to Provide Effective Assistance of

22

Counsel; and the June 30, 2015, Order Granting Stay of Proceedings and Releasing Defendant from Custody. We do not vacate the June 20, 2015, Release Order, and we remand to the district court with instructions to modify the release order if appropriate and proceed with the State's prosecutions against Carrillo.

{32}     **IT IS SO ORDERED.**


_____
**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**



_____
**PETRA JIMENEZ MAES, Justice**



_____
**EDWARD L. CHÁVEZ, Justice**



**BARBARA J. VIGIL, Justice**, **specially concurring**

**VIGIL, Justice (specially concurring).**

{33} The instant appeal highlights a chronic problem that plagues the criminal justice system in New Mexico. The district court characterized the "major issue" in this case as "the failure by the State of New Mexico . . . to provide sufficient funds to pay for effective assistance of counsel for indigent defendants in criminal cases." Thus, the district court's orders were in direct response to a perceived crisis, fueled by a shortage in human and financial resources available to the LOPD for its work in Lincoln County. And because it is ultimately the duty of the courts to ensure the protection of constitutional rights, the district court took action. Although I agree with the holding and legal analysis laid out in the majority opinion explaining why those orders must be vacated, I write separately to discuss other facets of this important case which I believe are deserving of attention.

{34} In its landmark 1963 opinion in *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) the United States Supreme Court held that the obligation to ensure that indigent defendants have access to counsel falls on the State, and where a defendant cannot afford an attorney, the State is responsible for providing counsel "in order to ensure fairness" in the proceedings. *State v Brown*, 2006-NMSC-023, ¶ 12, 139 N.M. 466, 134 P.3d 753. In response to *Gideon*, the New Mexico Legislature enacted the

Indigent Defense Act (IDA), NMSA 1978, §§ 31-16-1 to -10 (1968), and the Public Defender Act (PDA), NMSA 1978, §§ 31-15-1 to -12 (1973, as amended through 2014). The IDA specifically mandates that "[t]he attorney, services and facilities and expenses and court costs shall be provided at public expense for needy persons." Section 31-16-3(A). The PDA created a centralized public defender department (Department) and provides that the "public defender *shall* represent every person without counsel who is financially unable to obtain counsel and who is charged . . . with any crime that carries a possible sentence of imprisonment." Section 31-15-10(C) (emphasis added).

{35}     Prior to these enactments, it was the responsibility of the courts to appoint counsel upon a finding that a defendant could not afford to hire an attorney. *See*, *e.g.*, *State v. Anaya*, 1966-NMSC-144, ¶ 13, 76 N.M. 572, 417 P.2d 58 ("When the offense with which the defendant is charged is punishable by imprisonment in the penitentiary, the court is required to assign counsel 'if the prisoner has not the financial means to procure counsel[.]' " (citation omitted)). In New Mexico and elsewhere, these appointed attorneys were not paid for their services. However, systems in which attorneys were required to provide representation for free or very little money have not passed constitutional scrutiny. Indeed, courts in several

jurisdictions have determined that the failure to provide reasonable compensation for legal services amounts to a taking of property, in violation of the attorney's Fifth Amendment rights. *See*, *e.g.*, *DeLisio v. Alaska Superior Court*, 740 P.2d 437, 442 (Alaska 1987) ("[A] court appointment compelling an attorney to represent an indigent criminal defendant is a taking of property for which just compensation is required."); *Arnold v. Kemp*, 306 Ark. 294, 302 (1991), holding modified by *State v. Post*, 311 Ark. 510 (1993) ("[T]he burden imposed on [the attorneys] is excessive to the extent that it constitutes a 'taking' of their property and to limit them to a mere award of $1,000.00 for their work and skills is constitutionally unacceptable."); *State ex rel. Stephan v. Smith*, 242 Kan. 336, 370 (1987) ("When the attorney is required to advance expense funds out-of-pocket for an indigent, without full reimbursement, the system violates the Fifth Amendment. Similarly, when an attorney is required to spend an unreasonable amount of time on indigent appointments so that there is genuine and substantial interference with his or her private practice, the system violates the Fifth Amendment."). While New Mexico courts still retain the authority to appoint counsel, since the enactment of the PDA, the Department has the responsibilities of determining eligibility and providing counsel to indigent defendants, and it pays those attorneys using appropriations it receives from the

Legislature. *See State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 12, 115 N.M. 573, 855 P.2d 562 (explaining that the Department has the statutory authority to establish indigency guidelines and, while courts should defer to the department's determinations, they "retain the ultimate authority to determine indigence and the discretionary ability to order the appointment of a public defender when it is necessary to protect the defendant's constitutional or statutory rights").

{36} Over time, the Department has had to fulfill its duties with extremely limited resources as it strives to provide the highest quality representation possible. The Department recently underwent a significant change in its structure in 2012, when the voters of New Mexico approved a state constitutional amendment to establish a "public defender commission" to oversee the "public defender department . . . as an independent state agency" and "provide guidance to the chief public defender in the administration of the department and representation of indigent persons." N.M. Const. art. VI, § 39 (internal quotation marks omitted). Prior to the amendment, the Department was "administratively attached" to the executive branch, and the governor had the power to appoint the chief public defender. *See* § 31-15-4(A), (C) (1985); *compare* § 31-15-5(A) (1978) *with* § 31-15-5(A) (2013). Now the Department is overseen and the chief public defender is appointed by the independent

27

commission. Section 31-15-4(A) (2013). Yet, the State's obligation to pay the costs of indigent defense through the funding of the Department remains unchanged. *See* Section 31-15-5(B) (remaining essentially unchanged after 2013 amendments).

{37}     The instant constitutional challenge to the Department's fee schedule for providing payment to contract defense counsel throughout Lincoln County was presented in the context of one defendant's case. Defense counsel argued that while the lack of resources provided to him by the Department has made it difficult to render effective representation, he would nonetheless be able to provide constitutionally effective assistance to his client in this case. Defense counsel relies upon *Cronic* and *Young* to support his constitutional claim, but as set forth in the majority opinion, those cases each address a situation in which circumstances surrounding a case impacted the defense attorneys' ability to provide effective representation in that particular case, not the type of systemic or structural problem that the district court attempted to address below. Accordingly, the record before us does not present a sufficient basis for declaring there has been a denial of the right to effective assistance of counsel based on the wages paid to contract criminal defense attorneys in Lincoln County.

{38}     Other jurisdictions have been called upon to address structural problems like

28

underfunding or low attorney compensation which amounted to a systematic deprivation of the right to counsel. In such cases,

> the focus is not on a post-hoc historical review of a criminal trial, but is instead based on the structure through which indigent defense is provided by the state. A structural challenge involves a realistic assessment of whether the state has provided an adequate framework for ensuring that the right to counsel is realized in cases involving indigent defense.

*Simmons v. State Pub. Def.*, 791 N.W.2d 69, 76 (Iowa 2010). Low pay for contract counsel has been the basis of some structural challenges, and where the pay is so low that it has resulted in a shortage of attorneys necessary to represent all defendants in need, courts have found that such arrangements do not satisfy a state's obligation to provide counsel. *See, e.g.*, *Lavallee v. Justices in Hampden Superior Court*, 442 Mass. 228, 246 (2004) (concluding there was a constitutional violation where low pay for contract attorneys had led so many of those attorneys to discontinue taking on contract cases that the nineteen petitioners had no lawyer to assist them during their arraignments or bail hearings); *N.Y. Cty. Lawyers' Ass'n v. N.Y.*, 763 N.Y.S.2d 397, 399-400 (2003) (holding that the state's failure to increase the rates paid to contract counsel "violates the constitutional and statutory right to meaningful and effective representation" because it had caused a shortage of attorneys and led to court delays, denial of counsel, and ineffective assistance by the remaining attorneys who shoulder

larger caseloads). At least one court has also found there was a constitutional violation where defendants received appointed counsel, but the attorneys were paid so low and had so many cases that it was "virtually impossible that the lawyer, no matter how competent or diligent, [would] be able to provide effective assistance." *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1132 (W.D. Wash. 2013). In *Wilbur*, the court found that the total payments to contract counsel worked out to $10 or less per case and concluded that this violated the defendants' right to counsel. *Id*.

{39}     In the absence of a constitutional violation, it is imperative in the administration of justice that we respect the independence of the Department and the Commission and refrain from interfering with their internal management decisions. *See ABA Ten Principles of a Public Defense Delivery System* 2, (February 2002), http://www.americanbar.org/content/dam/aba/administrative/legal_aid_indigent_d efendants/ls_sclaid_def_tenprinciplesbooklet.authcheckdam.pdf (last viewed May 27, 2016) (emphasizing the importance of having a public defense function that is "independent from political influence and subject to judicial supervision only in the same manner and to the same extent as retained counsel"). It is the role of the chief public defender and Commission to determine how best to allocate resources for the functions of the Department as a whole. These administrators are legally responsible

for deciding how to use the available funding in a manner most beneficial to the overall needs of the Department. The judiciary will only intervene when presented with a case that demonstrates that the Department's operations violate the constitution, either because of unlawful managerial decisions or a lack of resources necessary for providing the effective representation required under our Constitution and statutes.

{40}     Keeping New Mexicans safe is the ultimate goal of our criminal justice system, but we cannot expect this noble goal to be achieved without adequately funding all the public partners responsible for the fair administration of justice, including law enforcement agencies, district attorney's offices, the public defender department, independent crime laboratories, and the judiciary. Failure to fund the criminal justice system will undermine the intended effect of laws enacted to ensure public safety. While the record in the instant case did not demonstrate a constitutional violation, it is a reminder that a system that effectively ensures public safety and protects constitutional rights comes at substantial fiscal cost. Accordingly, I respectfully concur.

_____
**BARBARA J. VIGIL, Justice**

31