Certiorari Granted, November 5, 2018, No. S-1-SC-37301

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-005

Filing Date: September 26, 2018

No. A-1-CA-35790

STATE OF NEW MEXICO,

  Plaintiff-Appellee,

v.

JAMES EDWARD BARELA,

  Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
James Waylon Counts, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**GALLEGOS, Judge.**

**{1}** Defendant James Edward Barela appeals his conviction for felony battery against a household member, NMSA 1978, Section 30-3-17(A) (2008), asserting that his sentence was improperly enhanced, pursuant to the habitual offender enhancement statute, NMSA 1978, Section 31-18-17(A) (2003). Defendant also argues that the district court erred in denying his motion to dismiss on speedy trial grounds and in refusing to admit extrinsic impeachment evidence at trial. For the reasons that follow, we affirm.

1

**BACKGROUND**

**{2}**   Following a physical altercation between Defendant and Ms. Rebecka Gray (Victim), the mother of his son, the State indicted Defendant for one count of child abuse, one count of false imprisonment, and one count of battery against a household member. Immediately prior to trial, Defendant pleaded no contest to a count of felony battery against a household member. Following trial, a jury convicted Defendant of false imprisonment but acquitted him of the child abuse count. The district court sentenced him to one and a half years incarceration for each count. Further, based on a prior felony conviction, the district court imposed a one-year habitual offender enhancement for each count, resulting in a five-year sentence. Defendant then appealed to this Court.

**DISCUSSION**

**A.    Habitual Offender Enhancement**

**{3}**   Defendant, a three-time domestic violence offender, pleaded no contest to, and was convicted of, felony battery against a household member, contrary to Section 30-3-17(A), which provides, "[w]hoever commits three offenses of battery against a household member . . . when the household member is a spouse, a former spouse, a co-parent of a child or a person with whom the offender has had a continuing personal relationship is guilty of a fourth degree felony." Based on a prior felony conviction for false imprisonment, Defendant's sentence was subsequently enhanced by one year, pursuant to Section 31-18-17(A), which provides that a person convicted of a noncapital felony "who has incurred one prior felony conviction . . . is a habitual offender and his basic sentence shall be increased by one year." Defendant argues that under the reasoning set forth in *State v. Anaya*, 1997-NMSC-010, 123 N.M. 14, 933 P.2d 223, the district court erred in applying the habitual offender enhancement to his conviction because the felony battery against a household member statute is self-enhancing. To resolve this issue, we must engage in statutory interpretation.

**{4}**   Statutory interpretation is a matter of law that is reviewed de novo. *State v. Rapchack*, 2011-NMCA-116, ¶ 8, 150 N.M. 716, 265 P.3d 1289. Our goal when interpreting statutes is to give effect to the intent of the Legislature by applying the plain meaning of the words in the statute unless doing so would lead to an absurd or unreasonable result. *Id*.

**{5}**   We thus begin with the plain meaning of the statutes at issue. Section 30-3-17(A) provides that a defendant who commits three offenses of battery against a specific subset of household members "is guilty of a fourth degree felony." Section 31-18-17(A) provides for a one-year enhanced sentence when a person with one prior felony conviction is subsequently convicted of a noncapital felony. Based on the language in these statutes, there does not appear to be any basis for concluding that the district court erred in enhancing Defendant's fourth-degree felony battery on a household member conviction by one year based on his prior felony conviction for false imprisonment.

2

**{6}** As stated above, however, Defendant argues that the district court's imposition of the habitual offender enhancement was improper under *Anaya*. In *Anaya*, our Supreme Court addressed whether a felony driving while intoxicated (DWI) conviction was subject to the habitual offender enhancement. 1997-NMSC-010, ¶¶ 26-36. The Court ultimately concluded that it was not, reasoning that the "insurmountable ambiguity" as to whether the Legislature intended for the habitual offender enhancement to apply to fourth-time or more DWI offenders required application of the rule of lenity. *Id.* ¶¶ 32, 35.

**{7}** *Anaya* was context-specific and much of our Supreme Court's analysis with respect to "insurmountable ambiguity" was based on the language of the DWI statute at issue in that case, NMSA 1978, Section 66-8-102(G) (1994). We are not convinced that the DWI statute's ambiguity should be automatically imported to the domestic violence statute at issue here. Instead, we must construe Section 30-3-17(A) on its own terms. And in so doing, we do not see the same sort of ambiguity that was present in *Anaya* that would lead us to apply the rule of lenity.

**{8}** Of particular note, in *State v. Begay*, our Supreme Court clarified that "[its] holding in *Anaya* rested not on a concern that the Legislature did not intend to create two enhancements for the same crime, but rather a concern that the Legislature did not intend to have a fourth or subsequent DWI offense considered a felony for purposes of the habitual offender statute." 2001-NMSC-002, ¶ 9, 130 N.M. 61, 17 P.3d 434. Our Supreme Court also stressed its continued belief "that the Legislature did not intend to punish fourth-time or more DWI offenders in the same manner as other fourth-degree felons." *Id.* ¶ 10 (alteration, internal quotation marks, and citation omitted). The question for us, then, is whether, given the plain language of Section 30-3-17(A) and Section 31-18-17(A), there is a countervailing basis for concluding that the Legislature did not intend to punish someone who repeatedly (three times) battered an intimate household member in the same manner as other fourth-degree felons. For the following reasons, we answer the question in the negative.

**{9}** First, our Supreme Court's analysis in *Anaya* largely turned on the fact that both the DWI statute, which falls within the Motor Vehicle Code and has its own separate, intricate sentencing scheme, *see* § 66-8-102(E)-(L), and the habitual offender statute were silent as to the applicability of the habitual offender enhancement on felony DWI offenses. *See Anaya*, 1997-NMSC-010, ¶ 31 ("The [L]egislature's silence in both Section 31-18-17 and Section 66-8-102(G), is the strongest evidence that the [L]egislature *did not intend* the habitual offender sentences in Section 31-18-17 to apply to felony DWI."). In contrast, the felony battery against a household member statute at issue in this case falls within the Criminal Code. And it is clear that the habitual offender statute is specifically applicable to persons convicted of noncapital felony offenses within the Criminal Code. *See* § 31-18-17(A) (indicating that the habitual offender enhancement applies to "[a] person convicted of a noncapital felony in this state whether within the Criminal Code . . . or the Controlled Substances Act . . . or not[.]"). Therefore, not only are we not dealing with legislative silence, as the Court was in *Anaya*, but we are instead dealing

3

with express statutory language indicating a legislative intent that the habitual offender enhancement apply to felonies under the Criminal Code.

**{10}** Second, the Court in *Anaya* concluded that there was ambiguity with respect to whether the Legislature intended to punish fourth-time or more DWI offenders in the same manner as other fourth-degree felons, based in part on the fact that (1) the DWI offenses were non-violent offenses, and (2) Section 66-8-102(G) used the word "jail" instead of "prison." *Anaya*, 1997-NMSC-010, ¶¶ 29, 33, 34. According to *Anaya*, these facts evinced—at least somewhat—that the Legislature intended to treat a DWI felon differently than a typical felon. *Id.* ¶ 33. We have neither of those concerns here. There is no mention of "jail" within Section 30-3-17, nor are we dealing with a nonviolent offense.

**{11}** Thus, given the explicit application of the habitual offender enhancement to convicted felons under the Criminal Code, as well as the lack of countervailing indicia within either statute at issue, we do not see any ambiguity with respect to whether the Legislature intended to treat a serial domestic batterer (of a particular subset of close, intimate individuals) as a typical fourth-degree felon. In the absence of ambiguity, applying the rule of lenity is inappropriate. *See State v. Edmondson*, 1991-NMCA-069, ¶ 12, 112 N.M. 654, 818 P.2d 855 (stating that the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute" (emphasis, internal quotation marks, and citation omitted)). Consequently, based on the plain language of the statutes at issue, we conclude that the one-year habitual offender enhancement of Defendant's fourth-degree felony battery on a household member sentence was proper as a matter of law.

## B.    Speedy Trial

**{12}** Defendant was arrested on February 20, 2014, indicted on March 12, 2014, and scheduled to stand trial on August 21, 2014. On August 20, 2014, Defendant filed a motion to continue his trial. The motion was granted, and nine days later, Defendant made a pro forma demand for speedy trial. Defendant's trial was scheduled and rescheduled on the court's trailing docket three times; first in November 2014 when it came up ninth on the docket, then in February 2015 when it came up fifth on the trailing docket, and again in May 2015 when it came up fifth on the docket. Then on August 13, 2015, the day trial was scheduled to begin, the State filed a motion to continue the trial because it was unable to locate Victim, a key witness in the case. Defense counsel concurred with the motion, and the district court granted the continuance. On October 2, 2015, Defendant filed a motion to dismiss the case for violation of his speedy trial rights. The district court denied Defendant's motion to dismiss, finding that the case was of intermediate complexity; that the delay was caused by Defendant's delay, the State's delay, and the court's schedule; and that the prejudice to Defendant was not so great as to require dismissal. Defendant's trial commenced on November 23, 2015. On the second day of trial, defense counsel renewed her motion to dismiss on speedy trial grounds, but the district court declined to revisit its prior ruling on the matter.

4

**{13}** Both the Federal Constitution and the New Mexico Constitution guarantee an accused the right to a speedy trial, recognizing "a societal interest in bringing an accused to trial and . . . [in] preventing prejudice to the accused." *State v. Brown*, 2017-NMCA-046, ¶ 12, 396 P.3d 171 (alteration, internal quotation marks, and citation omitted). When reviewing a district court's speedy trial decision, we weigh and balance de novo four factors, derived from *Barker v. Wingo*, 407 U.S. 514, 529-30 (1972): "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated." *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). In doing so, "[w]e defer to the district court's factual findings." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

## 1.    Length of Delay

**{14}** We begin by determining whether the length of delay is presumptively prejudicial—if it is, a speedy trial analysis is warranted. *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121 (noting that the length of delay, the first factor in speedy trial analysis, "acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being 'presumptively prejudicial,' and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred"). A delay is presumptively prejudicial if it extends beyond one year for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *Garza*, 2009-NMSC-038, ¶ 2. "In determining what weight to give the length of any delay, we consider the extent to which the delay stretched beyond the presumptively prejudicial period." *State v. Lujan*, 2015-NMCA-032, ¶ 11, 345 P.3d 1103. Greater delays will potentially weigh more heavily against the state, and delay amounting to little more than the minimum needed to trigger a speedy trial analysis will not weigh heavily in a defendant's favor. *Id.*

**{15}** We defer to the district court's finding that the case was of intermediate complexity and should have been brought to trial within fifteen months. *See Ochoa*, 2017-NMSC-031, ¶ 15 (deferring to district court's complexity finding and parenthetically noting that "the complexity of the case is best determined by the district court, which must consider both the nature and complexity of the crime"). We also note that Defendant's appellate argument that the case should have been considered simple is undeveloped, and we decline to address it. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that this Court does not review unclear or undeveloped arguments).

**{16}** Defendant was arrested on February 20, 2014, and his trial began on November 23, 2015, resulting in a delay of twenty one months and three days. Because the allowable fifteen month period for cases of intermediate complexity was exceeded by six months, the delay was presumptively prejudicial and weighs slightly against the State. *See State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (concluding

that a six month delay beyond the presumptive threshold weighed slightly against the state in a case of intermediate complexity).

## 2.    Reason for Delay

**{17}**    The next consideration, the reason for the delay, "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). There are three types of delay attributable to the state, each carrying varying weight in a reviewing court's analysis. *Serros*, 2016-NMSC-008, ¶ 29. The first type is "a deliberate attempt to delay the trial in order to hamper the defense," which is weighed heavily against the state. *Id.* (alteration, internal quotation marks, and citation omitted). The amount of weight we assign against the state for the second type of delay—"negligent or administrative delay"—is "closely related to the length of delay[.]" *Garza*, 2009-NMSC-038*,* ¶ 26; *see id.* ¶ 29 (identifying "burdens on the criminal justice system, such as overcrowded courts, congested dockets or the unavailability of judges" as negligent or administrative delay (citation omitted)). Finally, where the delay is due to "a valid reason, such as a missing witness," it is often "inevitable and wholly justifiable[,]" and we therefore balance the reasonableness of the state's efforts to move a case toward trial against the perils of conducting a trial "whose probative accuracy the passage of time has begun by degrees to throw into question." *Id.* ¶ 27 (internal quotation marks and citations omitted).

**{18}**    There were four discernable periods of delay in this case: the delay between arrest and the first trial setting, the delay that occurred between Defendant's continuance and the next scheduled trial date, the delays that occurred as a result of the court's busy docket, and the delay that occurred as a result of the State's continuance. The initial delay from February 20, 2014 to August 20, 2014, occurred as the case was proceeding normally toward trial, and as such, amounts to a neutral delay that does not weigh against either party. *See Brown*, 2017-NMCA-046, ¶ 19 (concluding that the amount of time a case "was proceeding normally toward trial" does not weigh against either party). Defense counsel's request for a continuance on August 20, 2014, pushed the trial setting back to November 3, 2014, and this seventy-five day delay, being the result of Defendant's motion, is weighed slightly against Defendant. *See Serros*, 2016-NMSC-008, ¶ 29 (acknowledging that delay caused by the defense is weighed against the defendant). The delay between November 3, 2014 and August 13, 2015, was caused by the district court's trailing docket, and was consequently the result of administrative or negligent delay that weighs slightly to moderately against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (identifying "congested dockets or the unavailability of judges" and "administrative burdens on the criminal justice system" as negligent delay weighed against the state). The delay between August 13, 2015 and November 23, 2015, was due to the State's request for a continuance. However, because defense counsel concurred with the motion and because continuances caused by the unavailability of a witness are considered valid reasons for delay, the delay is neutral and does not weigh against either party. *See id.* ¶ 27; *see also Serros*, 2016-NMSC-008, ¶ 29.

6

**{19}** In summary, Defendant was subjected to approximately nine months of neutral delay, two and a half months of delay attributable to himself, and approximately nine months of delay weighed against the State. The delay that occurred outside the fifteen month deadline for cases of intermediate complexity stemmed from administrative delay in the form of an overburdened court docket and valid delay in the form of a missing witness. On balance, this factor weighs slightly against the State.

### 3. Defendant's Assertion of His Speedy Trial Rights

**{20}** In assessing whether Defendant asserted his right to a speedy trial, we look to the timing of the assertion and the manner in which the right was asserted, according weight to the "frequency and force of the defendant's objections to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). While a failure to assert the right does not amount to waiver, we may consider "the timeliness and vigor with which the right is asserted." *Id.* "Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor[,]" and a defendant's assertion of the right can be weakened by acquiescence to the delay. *Ochoa*, 2017-NMSC-031, ¶¶ 41-42.

**{21}** Defendant submitted two pro forma assertions of his right—each through different attorneys—at the beginning of his case. Defendant also asserted his right through a motion to dismiss one month before trial, almost five months after the presumptively prejudicial period had begun, and again during trial. While these facts would normally be sufficient to weigh this factor at least slightly in Defendant's favor, we also note that his assertions of his right were somewhat mitigated by his "acquiescence to, and responsibility for," some periods of delay. *State v. Samora*, 2016-NMSC-031, ¶ 20, 387 P.3d 230. However, because Defendant's requested continuance occurred at the beginning of the case, and given the single instance of Defendant's concurrence with the State's continuance request, we conclude that this prong indeed weighs slightly in Defendant's favor.

### 4. Prejudice

**{22}** We analyze prejudice according to three overarching interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. "[A] defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. "[W]e recognize that the criminal process inevitably causes anxiety for defendants, but we focus only on undue prejudice." *State v. Castro*, 2017-NMSC-027, ¶ 27, 402 P.3d 688.

**{23}** Defendant argues that because his case was delayed beyond the fifteen month period allowable for cases of intermediate complexity, prejudice may be presumed under *Garza*. We disagree. Though *Garza* did acknowledge that, "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay," a court may conclude the defendant's right have been violated without a showing of prejudice, *Garza*'s holding remains clear—

7

a defendant must make a showing of "particularized prejudice" to succeed on speedy trial grounds. 2009-NMSC-038, ¶ 39.

**{24}** The length of, and reasons for, delay do not weigh so heavily in Defendant's favor as to allow for the presumption of prejudice that he seeks. Defendant's trial took place only six months past the fifteen months allowed, and the majority of the delay was either valid, due to a missing witness, or negligent, due to administrative difficulties in scheduling. Defendant's general assertion that he was prejudiced by his inability to "work or live his daily life" is insufficient to establish the "particularized prejudice" required under this factor. Aside from this assertion, Defendant has put forth no further argument or evidence to demonstrate he suffered prejudice as a result of the six month delay, and we therefore cannot conclude that Defendant's right to a speedy trial was violated. We affirm the district court's denial of Defendant's motion to dismiss for violating his speedy trial rights.

## C.    Admission of Victim's Letters

**{25}** Defendant argues that the district court erred in refusing to admit letters written by Victim as prior inconsistent statements at trial, contending that the letters were admissible for impeachment purposes under Rule 11-613(B) NMRA. "We examine the admission or exclusion of evidence for abuse of discretion, and the trial court's determination will not be disturbed absent a clear abuse of that discretion." *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{26}** Rule 11-613(B) governs the admissibility of extrinsic evidence of a prior inconsistent statement. "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Rule 11-613(B). Clarifying the proper application of this rule, our Supreme Court in *State v. Astorga* explained the meaning of inconsistency as used to describe a prior statement: "the question is not whether the witness denies—or even recalls—having made the *prior statement*. . . . The question, instead, is simply whether the *substance* of the witness's trial testimony is inconsistent with the prior statement." 2015-NMSC-007, ¶¶ 39-40, 343 P.3d 1245 (citations omitted). *Astorga* also clarified, however, that the admission of impeachment evidence under Rule 11-613(B) is "subject to the district court's broad discretion under Rule 11-403 [NMRA]." *Astorga*, 2015-NMSC-007, ¶ 40. Rule 11-403 provides the court with authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**{27}** The district court allowed defense counsel to use the content of the letters Victim wrote to impeach her if she presented inconsistent testimony but not as substantive evidence, and allowed defense counsel to question her regarding her motivations for testifying, particularly with regard to any perceived pressure from the State, reasoning that both were relevant to her credibility. Because it allowed defense counsel to explore the content of the letters through cross-examination, the district court ruled that the letters would not be admitted into evidence. During cross-examination, Victim admitted that she wrote the letters and testified at length about their content and her reasons for writing them. Defense counsel was able to quote portions of the letters verbatim and emphasize inconsistencies between her trial testimony and statements made in the letters.

**{28}** Though the letters apparently did contain information that contradicted Victim's testimony at trial, Defendant's cross-examination of Victim revealed those contradictions and inconsistencies. As such, admission of the letters themselves would be cumulative, and it was within the district court's discretion to refuse to admit them. *See* Rule 11-403 (allowing exclusion of evidence that needlessly presents cumulative evidence); *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that an appellate court will affirm the district court's decision if it is right for any reason and does not prejudice the parties); *see also Astorga*, 2015-NMSC-007, ¶ 44 (noting, after conducting harmless error analysis, affirmance based on Rule 11-403 would also be proper under the right for any reason doctrine).

**{29}** Alternatively, even if the district court erred in refusing to admit the letters, such error was harmless. In assessing harmless error, "we look to whether there is a reasonable probability that the error affected the verdict[,]" and the defendant bears the burden of demonstrating that he or she was prejudiced by the error. *Astorga*, 2015-NMSC-007, ¶ 43. Because the letters and their contents, including contradictions with Victim's testimony, were thoroughly explored by defense counsel during cross-examination, and Defendant does not point with any particularity to information contained in the letters that was not revealed through cross-examination, Defendant has failed to demonstrate the prejudice necessary for reversal under a harmless error analysis.

**CONCLUSION**

**{30}** For the foregoing reasons, we affirm.

**{31}** **IT IS SO ORDERED.**

_____
**DANIEL J. GALLEGOS, Judge**

**I CONCUR:**

_____
**HENRY M. BOHNHOFF, Judge**

9

**JULIE J. VARGAS, Judge (concurring in part, dissenting in part).**

**VARGAS, J. concurring in part, dissenting in part.**

**{32}** I concur in the majority opinion with respect to its decision of the speedy trial and evidentiary issues raised in Defendant's appeal. I cannot, however, concur in its decision that the district court properly enhanced his sentence, pursuant to Section 31-18-17(A).

**{33}** Our Supreme Court applied the rule of lenity in *Anaya*, when it found an insurmountable ambiguity as to the intended scope of the habitual offender sentencing enhancement statute and the felony DWI statute. The Court in *Anaya* considered whether Section 66-8-102, which penalized up to three DWI convictions as misdemeanors and subsequent DWI convictions as felonies, was self-enhancing so that applying a habitual offender enhancement to a felony DWI conviction would constitute an impermissible double enhancement. *Anaya*, 1997-NMSC-010, ¶ 27. The *Anaya* Court took note of the absence of any reference between the applicable DWI statute and habitual offender sentencing provision. *Id.* ¶¶ 27, 29, 31-32. Applying that rule, the Court concluded that the DWI statute is "a self-enhancing provision" that "changes the classification of a criminal act which . . . has been a misdemeanor into a felony *for sentencing purposes only*[,]" and reasoned that because a fourth DWI conviction is not an element of felony DWI, it therefore "cannot be sentenced as a felony for all purposes, including habitual offender sentencing." *Id.* ¶ 33.

**{34}** I find the Legislature's intention regarding the application of a sentence enhancement to Section 30-3-17 to be similarly unclear. When the Legislature's intent is not clear from the plain language of a statute, we employ other methods of statutory construction. Indeed, "[u]nless the [L]egislature's intention to apply an enhanced sentence is clear, we presume that the [L]egislature did not intend an enhancement." *Anaya*, 1997-NMSC-010, ¶ 30.

**{35}** Given the highly punitive nature of the habitual offender statute, it cannot apply absent clear evidence that the Legislature intended such a result. *See id.* ¶ 31. When the Legislature enacted Section 30-3-17, elevating a third conviction for battery against a household member to a felony, it did so without including any reference to the habitual offender sentencing statutes or clarifying its intentions regarding the application of the enhancement, notwithstanding our Supreme Court's reliance on the Legislature's silence as grounds for its holding in *Anaya* and its invitation to the Legislature to clarify its intent. *See* 1997-NMSC-010, ¶ 35; *id.* ¶ 31 ("The [L]egislature's silence in both Section 31-18-17 and Section 66-8-102(G), is the strongest evidence that the [L]egislature *did not intend* the habitual offender sentences in Section 31-18-17 to apply to felony DWI."); *see also State v. Begay*, 2001-NMSC-002, ¶ 9, 130 N.M. 61, 17 P.3d 434 (emphasizing that the Legislature did not act to clarify its intentions following issuance of *Anaya*, concluding legislative intent therefore "remains uncertain[,]" and applying rule of lenity). As such, I find no evidence that the Legislature intended the habitual offender enhancement to apply to a conviction for felony battery of a household member. Instead, the Legislature's action of enacting Section 30-3-17 approximately a decade after our

10

Supreme Court decided *Anaya* without referencing an intent to enhance the punishment for felony battery on a household member strongly suggests the Legislature did not intend the habitual offender enhancement to apply to convictions under Section 30-3-17(A). *See State v. Marquez*, 2008-NMSC-055, ¶ 7, 145 N.M. 1, 193 P.3d 548 (stating that the courts presume the Legislature is aware of existing law when enacting a statute); *Begay*, 2001-NMSC-002, ¶ 6 (opining that if the Legislature had intended to subject the felony to further enhancement by the aggravation statute, it would have stated that intention expressly). Given the absence of any clear intent in the plain language of the statutes, I see similar ambiguity regarding the scope of the enhancement's applicability as the Court did in *Anaya*, requiring us to apply the rule of lenity.

{36}    The State argues that because the language of Section 30-3-17(A) requires more than a predetermined number of prior convictions by also requiring that a third offense be committed against certain individuals listed in the statutory definition of a "household member," it is distinguishable from the self-enhancing provision recognized in *Anaya*. The individuals listed in Section 30-3-17(A), however, are all included in the broad statutory definition of "household member." *Compare* NMSA 1978, Section 30-3-11(A) (2010, amended 2018) (defining household member), *with* Section 30-3-17(A) (limiting crime to offenses against a "spouse, former spouse, a co-parent of a child, or a person with whom the offender has had a continuing personal relationship"). Section 30-3-17(A) therefore does not require proof of any additional elements outside those required to obtain a conviction for misdemeanor battery on a household member, and its limitation of scope only becomes relevant during sentencing in determining whether the battered household member qualified to elevate the battery to a felony, much as the number of prior battery convictions are used to elevate the current conviction to a felony.[1] The Legislature's decision to limit the applicability of Section 30-3-17(A) to household members with an intimate relationship to the defendant is evidence of a desire to provide those individuals with greater protection rather than an intent to expand its scope for sentencing purposes.

{37}    Furthermore, I am not convinced by the majority's rationale that enhancement is appropriate under the circumstances of this case because Section 31-18-17 contains "express statutory language indicating a legislative intent that the habitual offender enhancement apply to felonies under the Criminal Code." Section 31-18-17(A) provides that, "[a] person convicted of a noncapital felony in this state *whether within the Criminal Code . . . or the Controlled Substances Act . . . or not* who has incurred one prior felony conviction . . . is a habitual offender and his basic sentence shall be increased by one year." In support of its argument that express statutory language indicating legislative intent is set out, the majority relies on the fact that Section 31-18-17(A) specifically mentions the Criminal Code. By its plain language, however, Section 31-18-17 applies to any noncapital felony, regardless of where it is found in our statutes—whether "within the Criminal Code . . . or not." Section 31-18-17(A). I do not see how the broad language of Section 31-18-17(A) resolves the ambiguity between the two statutes.

_____

[1]The State does not argue or suggest that the number of prior convictions is a required element of the offense under Section 30-3-17(A).

**{38}** Finally, I am not persuaded by the majority's differentiation of *Anaya* based on the fact that the battery statute does not mention "jail." While the *Anaya* Court found the mention of "jail" to be additional evidence that the Legislature did not intend for the habitual offender enhancement to apply to felony DWI, it was the Legislature's silence that was "the strongest evidence that the [L]egislature *did not intend* the habitual offender sentences in Section 31-18-17 to apply." *Anaya*, 1997-NMSC-010, ¶ 31.

**{39}** I would apply the reasoning set forth in *Anaya*, hold that Section 30-3-17(A) is a self-enhancing statute that cannot be subject to an habitual offender enhancement under Section 31-18-17 and continue to encourage legislative clarification.

_____

**JULIE J. VARGAS, Judge**

12